ESSELSTYN, APPELLANT, v. MEYER & CHAPMAN STATE
BANK, RESPONDENT.

(No. 4,754.)

(Submitted April 18, 1922.   Decided May 26, 1922.)

[208 Pac. 910.]

*Real Property — Option Contracts — Agreement to Enter into
Contract—Absence of Terms—Invalidity—Conversion — Re-
ceivers—Title.*

Agreement to Enter into Contract—Absence of Terms—Invalidity.
  1.  An agreement to enter into a contract upon terms thereafter
  to be settled between the parties is void and cannot be made the
  basis of a cause of action. .
Real Property—Option Contract—Agreement to Enter into Contract—
  Invalidity.
  2.  Under the above rule, a land option contract authorizing the
  optionee, the holder of a sheriff's deed to the land covered by a
  prior mortgage which subsequently was foreclosed by the optioner,
  to sell the property in parcels "under terms which may be
  mutually agreed upon by the parties," was void.
Mortgages—Conversion—Title to Chattels, in Whom.
  3.  Where plaintiff was in possession of ranch property as agent
  for the receiver appointed under foreclosure proceedings, he had
  no title or right of possession to chattels claimed by him to have
  been converted by defendant.

*Appeal from District Court, Carbon County, in the Thir-
teenth Judicial District; Wm. A. Clark, a Judge of the Fifth
District, presiding.*

ACTION by E. E. Esselstyn against the Meyer & Chapman
State Bank.   From the judgment for defendant, plaintiff ap-
peals.   Affirmed.

*Mr. C. B. Nolan* and *Mr. F. W. Mettler,* for Appellant, sub-
mitted a brief and one in reply to that of Respondent; *Mr.
Mettler* argued the cause orally.

The words of a contract will be given a reasonable construc-
tion, where that is possible, rather than an unreasonable one,
and the court will likewise endeavor to give a construction

most equitable to the parties, and it will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided. (13 C. J. 540, 541, notes 22–25; *Helena L. & Ry. Co.* v. *Northern Pac. Ry. Co.,* 57 Mont. 93, 186 Pac. 702.)

Where parties to a contract have given it a practical construction by their conduct, as by acts in partial performance, such construction is entitled to great, if not controlling, weight in determining its proper interpretation. (13 C. J. 546, note 54; *National Bank of Gallatin Valley* v. *Ingle,* 53 Mont. 414, 164 Pac. 535; *Butte Water Co.* v. *Butte,* 48 Mont. 386, 138 Pac. 195.)

In this connection it may be observed that even after suit had been brought by plaintiff, the defendant did not by its answer claim that the latter part of the option agreement was void, as found by the lower court, but recognized that it was its duty under the contract to give deeds to cash purchasers obtained by Esselstyn, for it alleges that the agreement was entered into between the parties ''for the purpose of enabling plaintiff, if possible, to redeem said land from foreclosure sale, and to save for plaintiff any portion of said lands which it would not be necessary to sell in order to raise the money necessary for the redemption of the same.'' If it was necessary to sell the lands to raise the money, it was necessary to give deeds, and no one could give such deeds except the defendant. An obligation to sell lands, with no obligation to give deeds is a contradiction—an absurdity.

In construing the contract, and especially the word ''terms'' as employed in it, we must keep in mind the intention of the parties, as to which there is no dispute, which was, not to sell the lands, but to clear up defendant's indebtedness and save plaintiff's equity. And the whole contract must be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other. (Sec. 5030,

Rev. Codes; *Ackley* v. *Phenix Ins. Co.*, 25 Mont. 272, 280, 64 Pac. 665; *Bickford* v. *Kirwin*, 30 Mont. 1, 7, 75 Pac. 518; *Burnett* v. *Piercy*, 149 Cal. 178, 189, 86 Pac. 603; *Butte Water Co.* v. *Butte*, 48 Mont. 386, 138 Pac. 195.) In its ordinary significance the word "terms," as used in a contract for the sale of real estate, does not have reference to the price at which the sale is made, but rather to the time for making the deferred payments, the interest thereon, provisions for placing a deed in escrow, or for the giving of a deed on final payment, and so on. Its meaning must be determined from a consideration of the whole contract in the light of its real purpose.

An agreement to sell real property binds the seller to execute a conveyance in form sufficient to pass the title to the property. (Sec. 5086, Rev. Codes.) Unless a contrary intention appears, a contract for the sale of land will ordinarily be construed as contemplating a conveyance in fee. (39 Cyc. 1309, note 63.) If the contract does not prescribe the time for making the conveyance, it will be presumed that it is to be made within a reasonable time, and concurrently with the payment of the purchase money. (39 Cyc. 1326, 1327, notes 43, 44.)

Unless there is something in the contract to show a contrary intention, the conveyance by the vendor and the payment of the purchase money by the purchaser will be regarded as concurrent acts. (39 Cyc. 1334, note 25.) The law does not favor but leans against the destruction of contracts because of uncertainty. Therefore the courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties, if that can be ascertained. (6 R. C. L., sec. 59, p. 645, note 11.)

*Messrs. Shea & Wiggenhorn* and *Messrs. Johnston, Coleman & Johnston,* for Respondent, submitted a brief; *Mr. R. G. Wiggenhorn* argued the cause orally.

We insist that the contract in question is unenforceable and ineffective, for the reason that in its essence it is an agreement

to enter into subsequent contracts, the terms of which are not fixed but are left to subsequent negotiations and settlement between the parties.

The plaintiff seeks to recover damages for the alleged breach of that portion of the contract or option agreement authorizing him "to enter into any contracts of sale of the said property under such terms which may be mutually agreed upon by the parties hereto."

It is for the alleged failure of defendant to keep that portion of the agreement that this action is prosecuted. The terms and conditions of the contracts of sale to be entered into were in no manner defined or settled by the option contract. It is a well-settled principle of law that an agreement to make an agreement is no contract and cannot be enforced. (9 Cyc. 291; *Long* v. *Needham*, 37 Mont. 408, 96 Pac. 731; *Sibley* v. *Felton*, 156 Mass. 273, 31 N. E. 10; *St. Louis etc. R. Co.* v. *Gorman*, 79 Kan. 643, 28 L. R. A. (n. s.) 637, 100 Pac. 647; *Shepard* v. *Carpenter*, 54 Minn. 153, 55 N. W. 906; *Berry Bros.* v. *Hooper's Estate*, 179 Mich. 67, 146 N. W. 275; *Somers* v. *Musolf*, 86 Ark. 97, 109 S. W. 1173.) Under the authority of the above cases, we contend that, so far as sales to third parties were concerned, the option agreement was an agreement to make an agreement, the terms of which were not specified, and that, therefore, no cause of action may be predicated on a breach of that portion of the option contract.

MR. COMMISSIONER COMER prepared the opinion for the court.

This is an appeal from a judgment in favor of the defendant (respondent herein). Prior to the year 1912, the lands involved in this action were owned by one Sam W. Gebo, who was indebted to plaintiff (appellant herein). Plaintiff obtained judgment against Gebo for the amounts owed him, procured the issuance of execution, levied upon and caused the lands to be sold at execution sale, purchased the land, and received, on August 18, 1913, a sheriff's deed therefor, under

and pursuant to said execution sale upon said judgment. Theretofore, and on March 27, 1913, Gebo and wife quitclaimed their interest in the lands to plaintiff, but the deed was not acknowledged by Mrs. Gebo. However, prior to the rendition of the judgment, Gebo had given a first mortgage to F. L. Cleveland, who afterward assigned it to A. C. Johnson, who caused it to be foreclosed; and the lands mortgaged thereby were, on the sixteenth day of February, 1914, sold at public auction by the sheriff, the defendant bank purchasing the land at such foreclosure sale. The defendant was at the time of its purchase, and still is, the owner of a second mortgage given by Gebo upon this land, also given prior to the rendition of the judgment of plaintiff. On March 10, 1914, plaintiff made a quitclaim deed of his interest in the land to defendant bank, and the following agreement in writing was entered into between plaintiff and defendant:

### "Option.

"For value received, Meyer & Chapman State Bank, a banking corporation, organized and existing under and by virtue of the laws of the state of Montana, with its principal place of business at Red Lodge, Montana, does hereby agree to sell to Elmer E. Esselstyn of Fromberg, Carbon county, Montana, at any time before February 16, 1915, the following described real estate situated in the county of Carbon, state of Montana, to wit:

"The west half of the southwest quarter (W½SW¼) and the northeast quarter of the southwest quarter (NE¼SW¼) and the northwest quarter of the southeast quarter (NW¼-SE¼) of section twenty-seven (27); the southwest quarter (SW¼) of section twenty-eight (28), and the south half of the southeast quarter (S½SE¼) and the northeast quarter of the southeast quarter (NE¼SE¼) and lots five (5), and eight (8) of section twenty-nine (29) and lots one (1), two (2), seven (7) and eight (8) and the northeast quarter of the northeast quarter (NE¼NE¼) of section thirty-two (32) and the east half of the southwest quarter (E½SW¼) and the

northwest quarter of the southwest quarter (NW¼SW¼) and the east half (E½) of section thirty-three (33), all in township five (5) south of range twenty-three (23) east, M. P. M. Also all water, water rights, ditches, ditch rights, dams, flumes and aqueducts appurtenant to the above-described land, for the sum of $63,600.00 plus the amount of the charges of the present receiver of said property as allowed by the court, and which the said Meyer & Chapman State Bank hereafter may pay, with interest on the entire sum at the rate of ten per cent per annum from the date hereof until this option is exercised by the said Elmer E. Esselstyn; the said property to be sold subject to all taxes, water and ditch assessments and charges and liens of every nature and description, now existing or hereafter to be imposed upon the said real estate. The said Meyer & Chapman State Bank agree to co-operate with Elmer E. Esselstyn in the sale of this property or any legal subdivision thereof, and he is hereby authorized to enter into any contracts of sale of the said property under such terms which may be mutually agreed upon by the parties hereto. In the event said Elmer E. Esselstyn fails to purchase said land prior to February 16, 1915, all rights and obligations hereunder cease at once.

"In witness whereof, the said Meyer & Chapman State Bank has caused its name to be hereunto subscribed and its corporate seal to be hereunto affixed, by the hand of its president, this 10th day of March, 1914.

"[Signed] MEYER & CHAPMAN STATE BANK, Red Lodge, Mont.,

"By J. W. CHAPMAN, President.   [Seal.]"

The complaint consists of three counts. In the first count it is alleged the deed was given by plaintiff to defendant "by way of mortgage and not as an absolute conveyance of plaintiff's rights in and to said lands"; and that it was agreed plaintiff should have the right to pay off the indebtedness of defendant against said land and to receive a reconveyance of said lands, but that defendant has wrongfully refused to per-

mit plaintiff to pay off said indebtedness and treated the deed as an absolute conveyance and denied him any interest in said lands.

The second count alleges defendant was to hold the legal title as trustee for plaintiff; that the deed was given to clear, disencumber, and simplify the title to the lands so that a sale thereof, or of certain subdivisions, might be had, to the end that the said indebtedness might be paid and the mortgage and other liens removed: that pursuant thereto and as part consideration for the making of said deed, the option agreement was entered into; that the plaintiff obtained purchasers for large tracts of said land at reasonable cash prices, but that defendant refused to execute warranty deeds therefor; that plaintiff was then, and still is, able and willing to carry out his part of the agreement by obtaining purchasers for said lands and paying off the indebtedness, but that defendant has prevented plaintiff from selling the lands or any part thereof, from so paying off the indebtedness and receiving a reconveyance of the unsold portions thereof, with the wrongful purpose of obtaining absolute title to the premises, and of depriving the plaintiff of the same and his equity therein; that on February 17, 1915, defendant ejected plaintiff from the premises, destroyed alfalfa seeded by plaintiff, and greatly damaged the lands, to plaintiff's damage.

The third count alleges the making of the deed and the option, and that plaintiff obtained purchasers for a large quantity of said land for the purpose of obtaining funds to pay off the indebtedness and demanded of defendant the making of deeds therefor, to such intending purchasers, but that defendant refused, and has ever since wrongfully and oppressively prevented the plaintiff from selling the land, or any part thereof, and from paying off the indebtedness and receiving a reconveyance of the unsold portion thereof.

The plaintiff demanded the deed be declared a mortgage; that he be permitted to pay off the indebtedness and receive a reconveyance; that defendant account for the rents, issues,

and profits; and that plaintiff's damages for failure to convey to the purchasers of plaintiff be offset against defendant's indebtedness.

The answer of defendant alleges there was no consideration for the option agreement; that it is null and void; that plaintiff found two purchasers for two tracts of the land for the aggregate price of $20,000; that one tract has been sold to one of these purchasers, under a contract of sale negotiated by plaintiff, for the sum of $12,500; that it will convey the remainder of said land to plaintiff upon payment of the purchase price at foreclosure sale, interest, assessments and taxes paid by defendant, and mortgage indebtedness of defendant against said premises, allowing credit for said sum of $12,500; that it derives its title to said lands from the sheriff's deed given pursuant to the foreclosure sale of the Cleveland mortgage, and not from the deed given by plaintiff; that it has been at all times willing and able to perform all parts of said agreement on its part to be performed; that no demand was ever made upon defendant to convey any portion of said premises to plaintiff; that the plaintiff from the time the option agreement was entered into was given every opportunity to redeem said premises from said foreclosure sale, both in the manner provided by law, and as provided in said option agreement.

The evidence discloses that two persons were willing to buy certain subdivisions of the premises if they could get a deed at once, but defendant refused to issue deeds therefor, upon the ground it could not give good title until the period of redemption of the Cleveland mortgage had expired; defendant did, however, enter into contracts of sale with the purchasers produced by plaintiff, agreeing to transfer or sell them, upon definite terms of payment, certain portions thereof when the redemption period expired, if not redeemed.

The district court found that the deed and the option were given and made between the parties for the express purpose of aiding and facilitating the efforts of plaintiff to dispose of said lands and premises, or a certain portion thereof, to clear

said indebtedness due thereon to the defendant, and "that between the sixteenth day of February, 1914, and the fifteenth day of February, 1915, the plaintiff sought to interest several persons in the purchase of some portion of the premises in controversy, and that some such persons expressed a willingness to buy certain portions of said premises in controversy, provided they could get the title in fee simple or a warranty deed thereto." The district court further found: "That the plaintiff, nor anyone in his behalf, never demanded any warranty deeds or any deeds, either to himself or any other person claiming to have purchased, or willing to purchase, any of the premises described in the complaint herein, or any part thereof."

In the conclusions of law the district court found that the defendant was under no legal obligation, under the terms of the option, to execute warranty deeds to the plaintiff or to any persons claiming through him, or by him, as purchaser or otherwise, of any of the said lands and premises in controversy in this action. The defendant alleges it could not execute any deeds to any of the purchasers procured by the plaintiff and that it could not give a good title, for the reason there were redemptioners other than plaintiff who could, if they chose, exercise their right of redemption; and that the option agreement is void.

The controversy in this case may be decided by an interpretation of the option agreement.

It is the contention of the plaintiff that he produced purchasers for certain subdivisions of said land, who were able and willing to purchase the same, and that the defendant refused to execute a deed therefor, and that it was not the purpose and intent of the parties, in entering into the contract, merely to sell the lands to third parties, but that "the said defendant entered into an agreement with plaintiff, by which it agreed to sell to plaintiff, or permit the plaintiff to sell, any or all legal subdivisions of said lands and premises, until by means of the proceeds of such sales, or by any other means, the total

amount of said indebtedness against the said lands should be fully paid and satisfied, the unsold portions thereof to be thereupon reconveyed to plaintiff by defendant, after payment by plaintiff of the said indebtedness.''

Because of the failure of defendant to execute the deeds to the purchasers procured by plaintiff, this action for damages is brought. If the defendant was under no obligation to furnish a deed or deeds for the purchasers procured by the plaintiff under the terms of the option agreement, then there is no right of action in this case on the part of the plaintiff. It is not claimed that the plaintiff produced a purchaser for all the tract for the sum mentioned in the option agreement as a consideration, and the evidence does not disclose that any tender was made of the consideration by the plaintiff for the entire tract. The contract may be conveniently divided into two parts. In the first part the bank agrees to sell to plaintiff the lands at any time prior to February 16, 1915, for the sum of $63,600, plus certain charges of receivership relating to the foreclosure, taxes and assessments for water rights, with interest on these amounts, from the date of the option. Since the evidence does not show that plaintiff ever availed himself of this provision of the contract, or that he produced a purchaser or made a tender of the consideration, for the entire tract, or demanded a deed therefor, neither of the counts in this case for damages can be founded upon this portion of the agreement.

The second part of the agreement, upon which, as we understand, plaintiff relies, is as follows: ''The said Meyer & Chapman State Bank agree to co-operate with Elmer E. Esselstyn in the sale of this property or any legal subdivision thereof, and he is hereby authorized to enter into any contracts of sale of the said property under such terms which may be mutually agreed upon by the parties hereto. In the event said Elmer E. Esselstyn fails to purchase said land prior to February 16, 1915, all rights and obligations hereunder cease at once.''

Assuming that a purchaser was produced by plaintiff for a subdivision or subdivisions of this land under this part of the agreement, the contract does not express the terms, the amount to be paid for the subdivision to be purchased, or the time of the payment. It provides that the plaintiff is "authorized to enter into any contracts of sale of the said property under such terms which may be mutually agreed upon by the parties hereto." The terms are not definite or certain; in fact, there are no terms at all, either as to the consideration to be paid for the land, or the time of payment, but the terms are left to future agreement. We are of the opinion that the district court was not in error in concluding that the option agreement, "in so far as it attempted to provide for contracts or agreements to be performed by the parties thereto and at the time to be entered into by mutual agreement thereafter, is null and void and of no force and effect."

"An agreement to be finally settled must comprise all the terms which the parties intend to introduce. An agreement to enter into an agreement upon terms to be afterward settled between the parties is a contradiction in terms." (9 Cyc. 281; *Long* v. *Needham,* 37 Mont. 408, 96 Pac. 731.)

In *Sibley* v. *Felton,* 156 Mass. 273, 31 N. E. 10, the court said: "It is clear that on some things the minds of the parties had met, and on others they had not. The scheme or plan was not completed, and until it was there was no complete or final contract. Until then it was provisional and incomplete, and failure to agree upon the details or upon a complete plan would render all the preliminary agreements void."

In *Shepard* v. *Carpenter,* 54 Minn. 153, 55 N. W. 906, the court said: "But an agreement that they will in the future make such contract as they may then agree upon amounts to nothing. An agreement to enter into negotiations, and agree upon the terms of a contract, if they can, cannot be made the basis of a cause of action. There would be no way by which the court could determine what sort of a contract the negotiations would result in; no rule by which the court could ascer-

tain whether any, or, if so, what, damages might follow a refusal to enter into such future contract." To the same effect, see *St. Louis S. & S. F. R. Co.* v. *Gorman,* 79 Kan. 643, 28 L. R. A. (n. s.) 637, 100 Pac. 647; *Somers* v. *Musolf,* 86 Ark. 97, 109 S. W. 1173; *Streit* v. *Fay,* 230 Ill. 319, 120 Am. St. Rep. 304, 82 N. E. 648.

"Unless an agreement to make a future contract is definite and certain upon the terms to be embraced therein, it is nugatory." (1 Elliott on Contracts, sec. 175.)

But counsel for plaintiff, while admitting that a contract simply for the sale of a tract of land upon terms, prices and conditions to be thereafter mutually agreed upon by the parties would be no contract at all, so far as affecting the sale of the land is concerned, contends that this agreement is not such a contract; that the purpose and intent of the parties was not merely to sell the land to third parties, but that it was the intention of the parties that the defendant was to sell to the plaintiff, or permit the plaintiff to sell, any or all of the legal subdivisions of the lands, until by means of the proceeds of such sale, or by any other means, the total amount of said indebtedness against the said lands should be fully paid and satisfied, the unsold portions thereof to be thereupon reconveyed to the plaintiff by defendant, after payment by plaintiff of said indebtedness. But, construing the option in this light, the plaintiff must nevertheless base his cause of action upon the terms of the option, and conceding that the intention of the parties was as set forth by plaintiff, still he cannot prevail in this action unless he can show that the defendant has violated the terms of a valid agreement. If the option is not valid, or if the option is void, then his cause of action fails. Assuming that it was the intention of the parties to allow the plaintiff to sell the lands to third persons so as to clear the indebtedness of prior mortgages, we still have an agreement, indefinite and uncertain, and without any terms or conditions under which the subdivisions were to be sold. It is an agreement authorizing the plaintiff to enter into contracts of sale of the

said property, but only "under such terms as may be mutually agreed upon by the parties hereto." If the terms are not set forth in the contract, but left to future negotiations or future agreement, then, under the authorities, there is no agreement, and whether the intention of the parties was to enable plaintiff to sell the land to third persons so as to clear the indebtedness, or for any other purpose, is immaterial. This portion of the option is an agreement to enter into a contract of sale upon terms to be thereafter agreed upon, and in our opinion, is not a valid agreement. It is true that the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practical, each clause helping to interpret the other. (Sec. 5030, Rev. Codes 1907, now section 7532, Rev. Codes 1921; *Butte Water Co.* v. *Butte*, 48 Mont. 386, 138 Pac. 195.) But this construction cannot aid plaintiff, because there is no other part of the contract which alleges the terms under which the sales were to be made.

The district court found in its finding of fact No. 8 as follows: "There is no allegation in any of the causes of action attempted to be alleged in the complaint that the plaintiff and defendant ever entered into any contracts of sale upon terms mutually agreed upon between them for the sale of said lands, or any portion thereof, or that the plaintiff ever made any contracts of sale on terms which were acceptable to or ratified by the defendant, and afterward repudiated by them." We are of the opinion that the record sustains this finding.

Counsel for appellant state in their brief that the main question is whether the option agreement is null and void, and in this we believe counsel are correct, for their cause of action in this case is necessarily founded upon the agreement.

The district court found that defendant did not convert any [3] of plaintiff's property and the evidence sustains this finding. The hay claimed by plaintiff was grown on the land in the year 1914. A receiver had been appointed under the Cleveland mortgage in 1912, and plaintiff was occupying these premises as agent of the receiver. The receiver was discharged

in 1917. Plaintiff therefore had no title or right of possession to the hay.

From an examination of the evidence in the record, we are of the opinion that the district court arrived at a correct conclusion in the premises, both on questions of fact and law, and we therefore recommend that the judgment appealed from be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.

Rehearing denied July 10, 1922.