KEYSTONE SHEEP COMPANY, a Wyoming Corporation,

*Plaintiff and Respondent,*

vs.

FRANK C. GREAR,

*Defendant and Appellant.*

(No. 2612; November 17th, 1953; 263 Pac. (2d) 138).

190

For the defendant and appellant, the cause was submitted upon the brief of Clarence G. Cypreansen and R. N. Ogden both of Casper, Wyoming, and oral argument by Mr. Ogden.

For the plaintiff and respondent the cause was submitted upon the brief of Edward E. Murane and R. R. Bostwick both of Casper, Wyoming, and oral argument by Mr. Murane.

## OPINION

BLUME, Chief Justice.

This is an action for specific performance of a contract to convey real estate. The judgment was in favor of the plaintiff and the defendant Frank C. Grear has appealed to this court. The petition alleges the following facts:

Plaintiff is a corporation duly organized and existing under the laws of the State of Wyoming. On February 10, 1950, Frances McCarthy, then a single person, was the owner of Section 35, in Township 36 North, Range 87 West of the Sixth Principal Meridian in Natrona County, Wyoming, and entered into an agreement with the plaintiff in which she agreed to execute a warranty deed to said real estate for the consideration of $3,200. A copy of the agreement is attached and made part of the petition. The consideration for the deed was fair and reasonable. In compliance with the agreement, there was paid to Frances McCarthy on behalf of Keystone Sheep Company the sum of $1,600 on November 15, 1950. Thereafter an additional sum of $1,000 was paid by plaintiff and credited to the estate of Frances McCarthy Grear and thereafter the balance of $600 was paid to Ruth A. Olsen, administratrix of the estate of Frances McCarthy Grear. Keystone Sheep Company has fully complied with the agreement for deed and has paid the full consideration therefor. Frances McCarthy during her lifetime failed to execute the warranty deed to plaintiff covering said real property. She died on or about March 31, 1951, intestate. Her estate was probated in Natrona County, Wyoming. A decree of distribution was made and entered in said estate on December 31, 1951. Defendant Frank C. Grear is the surviving husband of the deceased and under said decree the property involved herein was distributed and set over to him. Before the commencement of the action, plaintiff demanded of the defendant to execute the deed mentioned in the contract but he has failed to do so. Plaintiff accordingly asked for a specific performance of the contract above mentioned.

The defendant demurred to the petition on the ground that it failed to state a cause of action. This demurrer was overruled. Thereafter the defendant filed his

amended answer in the cause alleging that the petition fails to state a cause of action against the defendant and admitting substantially all the allegations of the petition except as here mentioned. He denied that the payments were made as alleged in the petition but on the contrary alleged in paragraph 7 in substance that the sum of $3,200 paid as alleged in the petition was not paid on the contract in question, but was paid by Ruth McCarthy individually on account of a loan (or accommodation) made to her by Frances McCarthy during the latter's lifetime.

The contract in question herein, which is admitted to have been executed by Frances McCarthy during her lifetime, called for the payment of $3,200 but stated that $1.00 was paid down. We think that the dollar was mentioned pro forma and we shall ignore that amount in the further discussion herein. This contract was executed by Frances McCarthy Grear while she was single. The whole amount of $3,200 was payable on April 10, 1950, but, as shown by the petition was not paid until later and by three installments as alleged. Later in 1950, or the early part of 1951, Frances McCarthy married the defendant Frank C. Grear. They went to California, the date not appearing, and Frances was killed in an autombile accident, the automobile being driven by her husband who was arrested by reason thereof. Bail was furnished by Ruth McCarthy in the sum of $1,000. The result of the case against the defendant does not appear. The stock of the Keystone Sheep Company, plaintiff herein, was all owned by Ruth McCarthy, except two shares issued to two individuals to qualify them as directors, and Frances McCarthy, sister-in-law of Ruth, was one of them. In other words, for all practical purposes, the Sheep Company and Ruth McCarthy were substantially one and the same party

and it seems that all the payments on the contract herein were made by Ruth McCarthy individually.

It has not been easy for us to determine just how to discuss this case in order to cover the various points raised in the brief of counsel but we shall do the best we can to reach at least the fundamental arguments which have been advanced by counsel for appellant.

## 1. Demurrer.

Counsel interposed a demurrer alleging that the petition failed to state cause of action. After the demurrer was overruled, counsel still insisted upon the same point in the answer which the defendant filed. Council assert that the demurrer should have been sustained because the petition failed to disclose performance by the plaintiff of the contract and no explanation was given because of the belated payments. The requirement in pleadings necessary in suits for specific performance is set out in 81 C.J.S. 680. And the point as to whether a demurrer to a petition in such action is good is discussed in 81 C.J.S. 706. The petition in this case alleges that the plaintiff has fully complied with the agreement for deed, and has paid the full consideration therefor. This allegation, it seems, was admitted by the demurrer. 81 C.J.S. 708. Counsel for appellant, however, appear to contend that the contract itself, to which reference was made in the petition, should be considered and that the contract on its face shows that, as a matter of fact, it was not literally complied with. We might say in this connection that the argument made by counsel also goes to the point raised by counsel as to whether or not it is equitable to enforce specific performance in this case. So far as the petition is concerned, it does not allege when the payments required to be made under the contract should be made. That is to say, it does not disclose that

the payments to be made under the contract were not made at the required time. But counsel for appellant seem to think that by considering the petition and the contract together, it is clearly shown that the payments were not made at the required time, namely on April 10, 1950, and it thus appears that the demurrer should have been sustained, and that it further appears that it is inequitable to decree specific performance. The main reason relied upon by counsel for appellant is the fact that time was made of the essence of the contract. So let us examine the contract.

It provides in part that the sale is made "upon the EXPRESS CONDITION, which is hereby declared a condition precedent, TIME being the ESSENCE of such condition; that the said party of the second part, etc.," should pay the amount specified and further provides as follows: "PROVIDED ALWAYS, and these presents are upon the express condition, that in case of failure of said party of the second part * * * to perform all or either of the covenants and promises on its part to be performed, then said party of the first part, her heirs, executors, administrators or assigns, shall have the right to declare this contract void, * * * ." While accordingly the contract states that the time is of the essence, it is modified by the proviso above quoted. Discussing that matter it is stated in Pomeroy's Specific performance on Contracts, 3rd Ed., § 393, as follows: "Returning to the stipulations which made the time of payment essential, if the clause be not absolute that the contract shall be *ipso facto* void upon a default in payment at the time, but its object and its language are to *give the vendor his election and power to put an end to the agreement* upon the vendee's failure in paying at the appointed day, then the vendor, if he intends to avail himself of the provision, must give the purchaser a timely and reasonable notice of his intention

to avoid the contract, or must do some unequivocal act which unmistakably shows that intention, for the vendor cannot treat the default alone as terminating the agreement." In 58 C.J. 1093 and 81 C.J.S. 628, 629, that rule is stated to be the general rule.

I nthe case of Gaughen v. Kerr, 99 Iowa 214, 68 N.W. 694, 695, 696, the contract in question contained clauses very similar to the clause contained in the contract here and the court said: " 'This brings us to a consideration of the question as to whether there has been such a forfeiture of the contract as to bar the plaintiff's rights thereunder. The time of payments of the notes is made, by express stipulation, of the essence of the contract. The parties have made it an essential part of the contract, but not in that sense as claimed by the defendant in his contention * * * . A failure to pay promptly when due does not ipso facto work a forfeiture of the contract. The parties did not so stipulate, and a court of equity will not extend the language beyond its fair import, to sustain a forfeiture, but rather limit it to its literal meaning, when that is necessary to give effect to its provisions, and maintain the rights of the parties under the contract. The language of the contract is that, upon failure to pay promptly when due, "then the first party shall have the right to declare this agreement null and void." This is a stipulation for the benefit of the grantor, and under it he may elect to declare a forfeiture or continue the contract in force, and upon his failure to make such election the contract remains in force.' " The court thereupon mentioned the fact that it would be inequitable for a seller not to elect to declare the contract void when the property might depreciate in value but insist upon the literal terms of the contract making time of the essence when the value of the property would increase, and the court thereupon concluded: " 'It is a reasonable construction

of the provisions of the contract, and more in harmony with equity and good conscience, to hold that the parties intended , not only that prompt payment should be made, but also that the right to forfeit, to be available, should be exercised with promptness.' "

In the case of Pier v. Lee, 14 S.D. 600, 86 N.W. 642, the contract likewise contained clauses almost exactly like those contained in the contract in question. The court cited the Iowa case supra with approval and came to the same conclusion. In the case of Coles v. Shepard, 30 Minn. 446, 16 N.W. 153, 154, the contract in question for conveyance of land made time the essence of the contract and provided that it might be declared null and void *at the option* of the seller. That clause would seem to have the same meaning as a clause which provides that the vendor *has a right* to declare the contract void. The court said in that case: "We do not feel called upon to determine what would have been the legal effect of the provision making time the essence of the contract, if it was unqualified; for, in our opinion, it is materially qualified by subsequent provision authorizing Mrs. Anderson *at her option,* to declare the contract null and void. With this qualification, the result is certainly no more than to authorize Mrs. Anderson to treat time as essential by declaring the contract null and void, and not otherwise. This declaration must be made to the plaintiff or her successor in interest. Until it is made the option is not exercised, and the contract is not annulled, but in force." See also cases cited in annotations 107 A.L.R. 278, 279. Furthermore, we think it entirely clear that when Frances McCarthy accepted payment of part of the money due in November 1950, she thereby waived the clause that time was of the essence. 81 C.J.S. 632, § 106g and see Fargusson v. Talcott, 7 N.D. 183, 73 N.W. 207. We may add that we do not pass upon

an option contract nor on a contract where the property involved is rapidly fluctuating in value.

It does not appear in this case that notice was given to the plaintiff by the seller indicating any intention to declare the contract void, and the petition was not, accordingly, demurrable because of the non-payment of money on the contract at the exact time mentioned therein. Nor does any reason appear why a court of equity should not decree the specific performance demanded herein as against the objection here urged by counsel for appellant.

Another ground urged in connection with the demurrer is that plaintiff failed to allege that it had no adequate remedy at law. That in same cases has been held to be ground for demurrer in an action for specific performance. 81 C.J.S. 706, note 5. The action in this case is upon a contract in writing for the conveyance of real estate to the plaintiff. It is stated in 49 Am. Jur. 185, 186, § 162, as follows: "As a general rule, the courts presume that remedy at law is inadequate in case of contracts to convey land, and no further allegation of inadequacy of legal remedy is necessary beyond that which is implied from the statement of the nature of the contract."

In the case of Ide v. Leiser, 10 Mont. 5, 24 P. 695, 697, 24 Am. St. Rep. 17, the court stated: "On behalf of the demurrer it is again argued that the complaint is defective, in that it does not state that the plaintiff has no complete and adequate remedy at law in damages. It is undoubtedly the general rule that 'in suits for specific performance the party complaining must not only show the acts relied on as part performance, his willingness and ability to perform his part of the contract, but it must also appear that his position is such that an action at law for damages will not afford

him adequate relief.' Ducie v. Ford, 8 Mont. 240, 19 Pac. Rep. 414. But actions for the conveyance of real estate are an exception, or perhaps not an exception, but rather the presumption exists, from the nature of the case, that damages are not adequate relief. In Baumann v. Pinckney, 23 N.E. Rep. 918, the court says, (Vann, J.;) 'Thus it happened that the court directed that the complaint should be dismissed, * * * because the plaintiff had an adequate remedy at law. According to a long and unbroken line of decisions the latter ground is clearly untenable. As early as 1835 it was said by Chancellor Walworth that in a suit in equity against the vendee to compel a specific performance of a contract to purchase land had always been sustained as a part of the appropriate and acknowledged jurisdiction of a court of equity, although the vendor has in most cases another remedy, by an action at law upon the agreement to purchase * * *; the right of the vendee to maintain specific performance is too well settled to require further discussion.' And see cases there cited. See also Pom. Eq. Jur. §§ 221, 1402; Story, Eq. Jur. § 746. We are of the opinion that the demurrer on this ground also should have been overruled."

The reason for the rule is stated in 81 C.J.S. 557, § 62, as follows: "Where land, or any estate or interest in land, is the subject matter of the agreement, the jurisdiction to enforce specific performance is undisputed, and does not depend on the inadequacy of the legal remedy in the particular case. So it is said to be as much a matter of course for courts of equity to decree a specific performance of a contract concerning real estate, which is in its nature unobjectionable, as it is for courts of law to give damages for its breach. Equity adopts this principle, not because the land is fertile, or rich in minerals, but because it is land, a

favorite and favored subject in England and every country of Anglo-Saxon origin. Land is assumed to have a peculiar value, so as to give an equity for specific performance, without reference to its quality or quantity."

## 2. Laches.

Defendant claims that the plaintiff was guilty of laches in not bringing his action sooner. In fact his counsel seem to think that the petition was demurrable because it showed laches. One ground assigned is that the lips of Frances McCarthy Grear are now sealed in death and is unable to testify to the facts in the case. The plaintiff could hardly anticipate the sudden death of Frances nor does this contention come with good grace from the defendant in view of the fact that he, as the evidence shows, was responsible for her death.

Another ground apparently assigned is that plaintiff could and should have pursued the statutory provision contained in § 6-1802 W.C.S. 1945, and subsequent sections, providing that upon petition and after hearing in the probate court, an executor or administrator may be directed to specifically perform a contract for the sake of real estate. To have pursued that remedy might have saved a few months time and there is no doubt that the plaintiff could have pursued the statutory remedy but was not compelled to do so except under a statute making that procedure exclusive which is not true in this state. See § 6-1806 W.C.S. 1945. It is stated in 34 C.J.S. 721: "Suits to enforce specific performance of contracts entered into by a decedent or his personal representative ordinarily must be brought in a court of chancery. The probate court is without jurisdiction of such suits unless jurisdiction is conferred by statute. The extent of the jurisdiction of the probate court depends on the statute, and, although it has been held to

be exclusive (in Pennsylvania), it is more commonly regarded as concurrent with the jurisdiction of courts of equity, where there is nothing in the act conferring jurisdiction which indicates an intention to restrict the bringing of such suits to the probate court." See also Pomeroy, supra, § 497. In the case of Raginsky v. Lawler, 313 Ill. 441, 145 N.E. 189, 191, it appears that the legislature in Illinois added § 111a to the statutes of that state authorizing a probate court to make an order for specific performance on a contract such as involved in this case. The court in that case stated as follows: "It is claimed the enactment of that amendment took from a court of chancery its jurisdiction to decree specific performance, and made the remedy by petition in the county court exclusive. The remedy in chancery to enforce performance of contracts to convey land is a common-law head of equity jurisdiction and has been exercised by courts of equity for centuries. 1 Story's Eq. Jur. § 716; 2 Pomeroy's Eq. Remedies, § 744. It seems clear the enactment of section 111a was not intended to deprive courts of chancery of their powers, in cases of specific performance of contracts to convey land. Its only purpose was to confer on the county court, upon the filing of a petition therein by the administrator, the power to order the performance of the contract of the decedent and the execution of the conveyance."

In this case the contract to convey real estate was made in February 1950; the action herein was brought just about two years thereafter. The estate of Frances McCarthy Grear was settled in the meantime. For some reason not disclosed by the record, counsel for plaintiff determined that it would not be advisable to pursue the statutory remedy above mentioned but wait until the estate should be closed and then bring the present action. We think it clear that this choice of remedy was

permissible (Johnson v. Johnson, 87 Colo. 207, 286 P. 109, 111) and we see nothing in the record including the petition which in any way discloses that the plaintiff was guilty of any laches herein.

3. Filing Claim with the Estate.

Counsel for appellant seem to contend that it was necessary for the plaintiff to file a claim with the administratrix of the estate of Frances McCarthy Grear in connection with the contract here in question. The contention is not well taken. It is stated in 34 C.J.S. 163, § 398, that it is necessary to file a claim with the personal representative of the estate in case of "every species of liability which the personal representative can be called on to pay out of the general funds of the estate. Debts or demands not falling within this category need not as a general rule be presented, * * * ." The situation is very much like one where the creditor has a secured claim. It is said in 34 C.J.S. 175, § 403: "According to the weight of authority, a creditor whose claim is secured by mortgage, pledge, or any specific lien need not present his claim for allowance in order to preserve his right to subject the property covered by the lien to the satisfaction of his claim, * * * ." In Mix v. Yoakum, 200 Cal. 681, 254 P. 557, 558, the court said: "There is a clear distinction between the cause of action of one who claims specific property held and claimed by the estate adversely to the claimant and a cause of action founded upon a claim against the estate. In the one case the claimant is in no sense a creditor of the estate, and in the other he occupies the position of a creditor." In the case of In re Bailey's Estate, 42 Cal. App. (2d) 509, 109 P. (2d) 356, 357, the court after quoting from Mix v. Yoakum, supra, stated: "One who claims as his own specific property held by an estate cannot be called a creditor of the estate. Estate of Dutard, 147 Cal. 253, 81 P. 519; Newport v. Hatton,

195 Cal. 132, 231 P. 987. In an action against the executor of an estate to recover specific real property as the owner thereof it is not necessary to file a claim. Cohn v. Cohn, 100 Cal. App. 746, 281 P. 504." To the same effect are In re Bank's Estate, 80 Mont. 159, 260 P. 128; Johnson v. Johnson, 87 Colo. 207, 286 P. 109. Harris v. Craven, 162 Ore. 1, 91 P. (2d) 302, was an action for the purpose of securing specific performance of an alleged oral promise which the plaintiff claimed her husband had made. And it was held that it was unnecessary to file a claim with the estate in order to have the contract specifically performed. The contention of appellant in this connection accordingly must be overruled. We might incidentally say that the filing of a claim with the estate for damages on account of a contract such as here involved would not in any event give the plaintiff herein an adequate remedy at law, the contrary of which seems to be contended by counsel for appellant.

4. Defense on the Facts.

The main defense of the defendant herein appears to be according to the answer filed by the defendant in the case that the $3,200, which was paid by Ruth McCarthy to Frances McCarthy Grear and her estate, was paid not on the contract in question but by reason of money left by Frances McCarthy before her marriage to Frank Grear in the hands of Ruth McCarthy for safekeeping. This was denied by Ruth McCarthy. The theory is based upon the fact that sometime in the spring of 1950, Ruth McCarthy as well as Frances McCarthy and the latter's sister, each received a legacy of $10,000; that Frances McCarthy at that time expected to be married to the defendant Frank C. Grear and that she did not want her expectant husband to know the amount of money she had and that accordingly she gave to Ruth McCarthy, out of her $10,000, the

sum of money above mentioned to keep for her without the knowledge of her expectant husband. The only witness in that connection on the part of the defendant here was Ruth Olsen, a cousin of the defendant herein. We shall discuss her testimony without reference to it being hearsay. She testified that she had no knowledge as to the amount of money that Frances McCarthy thus left in the hands of her sister-in-law, Ruth McCarthy. Her main testimony is as follows: "And she told me when she went to California (which was in March, 1951) that she had gotten all her money from Ruth that she had been keeping for her but $1,600." Counsel for appellant think that this testimony was proof of the defense interposed by the defendant herein. We think not. It is not improbable that Frances McCarthy made the statement to the witness Ruth Olsen, substantially to the effect as testified to by the latter, but it is also probable that Ruth Olsen misconstrued the statement. It must be remembered that Ruth McCarthy and the Keystone Sheep Company were substantially one and the same party to the knowledge of Frances and that the two were sisters-in-law. Under the contract in question herein, the $3,200 mentioned was payable on April 10, 1950. Frances could have made a demand for the payment thereof on that date. She did not do so. Not until November 15, 1950, did she ask Ruth to deposit $1,600 in a bank to her credit. Hence it is quite literally true that Ruth (being the same party as the Sheep Company) "had been keeping" $3,200 for Frances until that time, and was still keeping $1,600 for her after that time. The fact that the $1,600 mentioned by Ruth Olsen is the identical amount still owing on the contract when Frances went to California makes this construction of the conversation with Ruth Olsen highly probable.

We must refer to another matter in this connection.

Ruth McCarthy testified that the three payments aggregating $3,200 were paid by her individually in order to fulfill her obligation (and that of the Sheep Company) under the contract in question here. She did not, however, show that the recipients of the various payments were informed and understood that the payments of money paid were to be applied upon the contract. In fact Ruth Olsen, administratrix of the estate of Frances McCarthy Grear, denied that the $1,600 paid to her by Ruth was to be so applied. Counsel for appellant attach great significance to that fact. A number of statements in the brief of counsel for appellant herein refer to this matter. Thus counsel state: "All this * * * without pleaded allegation that the several recipients were informed the payments were upon the contract; without demand that the payments be endorsed upon the contract. * * * It is not shown that at the time of any of the three payments that remark of any kind was made to the recipient that the payment was because or on account of the contract for deed. * * * We again remark the utter absence of any reference to the contract at times of the three separate belated payments." Various other statements of like effect are contained in the brief of counsel for appellant. The conclusion drawn by counsel is that the payments must have been made for an indebtedness other than that arising out of the contract for deed. We fail to see the logic of that conclusion. It rests upon no valid premise. As a matter of fact, if the contention of Ruth McCarthy is correct, it would have been rather unusual to have mentioned the contract for deed when the payments were made, for all persons concerned knew that she and the Keystone Sheep Company were substantially one and the same party, so that, if, as Ruth contends, only one indebtedness existed, she naturally would think that to mention the specific indebtedness on which the money was to be applied would be wholly superfluous. Further-

more the evidence shows that neither Frances Mc-Carthy, nor her estate, nor the administratrix of her estate had any written evidence of any indebtedness of Ruth, other than that arising out of the contract for deed. It is not easy to believe that that would be true if Frances in fact entrusted any of her $10,000 to Ruth. The finding of the trial court on the point here considered was clearly right.

We have discussed all the points mentioned by counsel for appellant in their brief which seem to be worthy of discussion. We find no reversible error in the record and the judgment of the district court of Natrona County herein is, accordingly, affirmed.

*Affirmed.*

RINER, J., and HARNSBERGER, J., concur.