**George CROCKETT and Margaret Crockett, husband and wife, Appellants (Plaintiffs below),**

**v.**

**Martha V. LOWTHER et al., Appellees (Defendants below).**

**No. 4520.**

Supreme Court of Wyoming.

May 5, 1976.

Richard M. Davis, Jr., Burgess & Davis, Sheridan, signed the brief and appeared in oral argument on behalf of appellants.

William K. Archibald, Holstedt & Archibald, Sheridan, and .Michael J. Whalen, Billings, Mont., signed the brief and appeared in oral argument on behalf of the appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

In the district court, plaintiffs-appellants filed an action against defendants-appel-

lees for specific performance of a written contract by which the defendants' decedent, Laura Higgins, purportedly agreed to sell land located in Johnson County, Wyoming, to plaintiffs or, in the alternative, for damages for breach of contract. This appeal followed a judgment of the district court adverse to plaintiffs.

The document out of which the action arose provides as follows:

"PURCHASE OFFER AND ACCEPTANCE

"In accordance with preliminary negotiations conducted between the parties the undersigned LAURA A. HIGGINS, herein called the Owner, hereby proposes to sell to GEORGE CROCKETT and MARGARET CROCKETT, herein called the Offerors, the ranch of the Owner located one mile east of Buffalo, in Johnson County, Wyoming, and more particularly described as:

[Lands described.]

"subject to the following terms and conditions:

"At the present time Dean H. Smith of Buffalo, Wyoming holds a lease on said lands, dated June 25, 1968 and expiring March 31, 1974 at an annual rental of $1850.00. Under the terms of this lease the lessee has a preference right to purchase said lands. Notice has been sent Smith by certified mail and he has 30 days after receiving said notice within which to exercise his right of purchase. The offer to sell said lands is expressly made subject to the right of Smith to purchase the same within such period and subject to the further provision that if he does not elect to buy said lands that his lease remains in effect for the remainder of the term thereof if he desires to retain such lease.

"The proposed terms of sale are as follows:

"1. The sale price is $200,000.00 of which $58,000.00 will be payable as soon as a contract of sale is presented to the purchaser. The balance of $142,000.00 shall be paid in four annual installments of $35,500.00 in each of the years 1971, 1972, 1973 and 1974. Annual installments shall be paid on or before January 10th of each year. Purchasers shall pay interest at 7% per annum on balance of purchase price from date of contract. Interest payable at same time as principal installments and at all times to be computed on the remaining principal balance.

"The Owner now holds one-half of the oil, gas and other minerals in said lands and all minerals owned by her are included with the sale.

"3. Taxes will be pro-rated as of the date the contract is signed.

"4. Owner will furnish an abstract of title and purchaser shall have reasonable opportunity to have the same examined so that he may be assured of good and merchantable title. It is understood that the acreage above stated is approximate and I will convey all the land I now own in this ranch, but should a survey of the lands, or examination of the abstract disclose a variation of less than ten per cent of the quoted acreage, this shall in no way affect proposed sale or the price to be paid.

"5. Warranty deed will be delivered to purchaser upon payment of purchase price in full. Deed will be placed in escrow if purchaser so desires.

"Purchaser has deposited $1,000.00 earnest money with The First National Bank of Buffalo, Wyoming. In the event the present lessee exercises his preference right to buy said lands this $1000.00 shall be refunded to the Offerors. In the event the Offerors purchase said lands the $1000.00 shall be credited on the down payment. In the event the present lessee does not purchase said lands and the Owner submits a contract of sale to the Offerors and they do not carry through their offer to buy said

lands then the Owner shall retain said $1000.00 as damages.

"Dated this July 9, 1970.

"/s/ Laura A. Higgins

"Owner

"Accepted this July    , 1970.

"
"
"Offerors"

The instrument was signed by Laura A. Higgins on July 9, 1970, and mailed by her attorney to the plaintiffs for their signatures. Plaintiff George Crockett claims that he and his wife signed and returned it but had no evidence to support his testimony. No signed copy was found in the decedent's effects. The only copy bearing plaintiffs' signatures was produced over four years later on September 10, 1974, by the plaintiff George Crockett from his own files at the time of the taking of his deposition. His testimony at that time about the signing of it was uncertain and evasive. At the time of his deposition, Mr. Crockett testified that he had returned a signed copy to the attorney for Mrs. Higgins or the bank. The evidence discloses that neither received it.

On July 9, 1970, Mrs. Higgins served notice on Dean H. Smith, the lessee, that she had an offer to buy the ranch and offered him the opportunity to purchase on the same terms. He did not accept within the 30-day period provided by his lease.

*Prior* to the July 9, 1970 date of the purchase agreement, plaintiff George Crockett deposited the $1,000.00 referred to in the agreement form, with a letter of transmittal, dated June 25, 1970, in pertinent part:

"Enclosed herewith is my check in the amount of $1,000.00. This represents *earnest money on a 30 day escrow to be* drawn by Mr. Holland on behalf of Mrs. Higgins, whereby she proposes to sell us 223 acres of land about a mile east of Buffalo, for the sum of $200,000.00 net to her.

"At the closing of the 30 day escrow, I will pay an amount, which with the $1,000.00 enclosed herewith, will be not more than 29½% of the total amount. The balance to be paid in four annual installments, plus interest at the rate of 7% per annum.

"The agreement to be drawn by Mr. Holland will include water and mineral rights. All escrow and transfer expenses, including attorney's fees to be paid by the buyer.

"The buyer (George and Margaret Crockett) to assume the lease between Mrs. Higgins and Mr. Dean Smith.

" *    *    *  "

No other payments have been made or tendered.

On August 31, 1970, plaintiff George Crockett wrote Mrs. Higgins' attorney in significant part:

"After taking another look at the property we are about ready to give up our option money and forget the deal for the following reasons:

"1.  —The unkempt, run down condition of the entire property.

a.  debris, dead trees and brush and junk from one end of the place to the other.

b.  buildings have had no maintenance for years.

c.  much damage done to shade and shelter trees around house, evidentially [sic] by carelessly letting horses or other livestock 'bark' them.

d.  irrigation system had [sic] had insufficient maintenance and use and would need a lot of attention.

"2.  —The leaseholder, Mr. Dean Smith's uncooperative attitude.

a.  seems to resent that we did not go through him and pay him a commission to buy the place.

b.  in two telephone conversations indicated that he would expect 'compensation' for damages to his lease

if we went ahead with our plans to use less than five acres of the land for the purpose of building an access road and a summer home.

c. Mr. Smith also indicated that the water rights on the property might be in jeopardy some way.

"With the above in mind, we are weighing the matter very carefully. * * *"

Plaintiff George Crockett testified that the purpose of this was to obtain a lesser price. He was told by Mrs. Higgins' attorney that she would not consider any less.

Laura Higgins died on October 17, 1970. Her estate was immediately probated and on the 4th day of August, 1971, a decree of final settlement was entered setting the property over to the defendants as her heirs. During the administration of the estate, the plaintiffs filed no claim and did not petition the court for a conveyance under available Wyoming statutes.[1]

We pause momentarily to discuss those statutes. It is not necessary to pursue the procedure prescribed as a condition precedent to filing an action. It was held in *Keystone Sheep Company v. Grear,* 1953, 72 Wyo. 189, 263 P.2d 138, that unless the statute specifically provides that the proceeding in probate is the exclusive remedy, chancery cannot be deprived of its powers in causes of actions brought for specific performance of contracts to convey land. The Wyoming statutes which we have footnoted do not so mandate. The case also stands for the concept, which we continue to approve, that it is not necessary for a purchaser under a contract to convey realty to file a claim with the personal representative of the decedent in order to assert his rights under the contract.

There was a considerable conflict between the testimony of the plaintiff George Crockett and the several defendants. When we run into that sort of evi-

---

1. Section 2–166, W.S.1957:
"When a person who is bound by contract in writing to convey any real estate dies before making the conveyance, and in all cases when such decedent, if living, might be compelled to make such conveyance, the court or judge may make an order authorizing and directing his executor or administrator to convey such real estate to the person entitled thereto."

Section 2–167, W.S.1957:
"On the presentation of a verified petition by any person claiming to be entitled to such conveyance from an executor or administrator, setting forth the facts upon which the claim is predicated, the court or judge thereof must appoint a time and place for hearing the petition, and notice thereof must be personally served on the executor or administrator."

Section 2–168, W.S.1957:
"At the time and place appointed for the hearing or at such other time to which the same may be postponed, the court or judge must proceed to a hearing, and all persons interested in the estate may appear and contest such petition, by filing their objections in writing, and the court or judge may examine, on oath, the petitioner and all who may be produced before him for that purpose."

Section 2–169, W.S.1957:
"If, after a full hearing upon the petition and objections, and examination of the facts and circumstances of the claim, the court or judge is satisfied that the petitioner is entitled to a conveyance of the real estate described in the petition, an order authorizing and directing the executor or administrator to execute a conveyance thereof to the petitioner must be made, entered on the journal of the court."

Section 2–170, W.S.1957:
"The executor or administrator must execute the conveyance according to the directions of the order."

Section 2–171, W.S.1957:
"If, upon hearing, as hereinbefore provided, the right of the petitioner to have a specific performance of the contract is found to be doubtful, the court or judge must dismiss the petition without prejudice to the right of the petitioner, who may, at any time within two months thereafter, proceed by action to enforce a specific performance thereof."

Section 2–172, W.S.1957:
"Every conveyance made in pursuance of an order or decree as provided in this chapter, shall pass the title to the estate contracted for as fully as if the contracting party himself was still living and executed the conveyance."

dence, we must apply the rule that may seem tiresome in our constant repetition: we must assume that evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. *Peters Grazing Association v. Legerski,* Wyo. 1975, 544 P.2d 449, 455, and references there footnoted. We must also continue to hold that in the absence of special findings of fact, the reviewing court must consider that a judgment carries with it every finding of fact which is supported by the evidence. *Hendrickson v. Heinze,* Wyo.1975, 541 P.2d 1133, 1134; *School District No. 32 in Fremont County v. Wempen,* 1959, 80 Wyo. 311, 321, 342 P.2d 232, 235. A judgment will be affirmed on appeal if sustainable on any legal ground appearing in the record. *Heyl v. Heyl,* Wyo.1974, 518 P. 2d 28, 30; *In re Romer,* Wyo.1968, 436 P.2d 956, 958. We will have those settled rules of appellate review routine in mind when any statement of fact or law is in this opinion made.

The issues presented by the appellant on appeal are:

1. If the purchase offer and acceptance contains all of the essential elements of a binding contract, are plaintiffs entitled to specific performance of its terms?

2. Where the contract was signed by the owner and seller of the property and plaintiffs paid valuable consideration for the right to purchase the property, are the plaintiffs barred from recovery by the statute of frauds?

3. Where the plaintiffs were lulled into inaction by the promises and assurances of defendants, can the defendants now escape their obligations under the terms of the contract on the basis of laches or estoppel?

4. Where the court refused to order specific performance of the contract to convey real property, can the plaintiffs recover for damages suffered as a result of defendants' breach?

■ Our disposal of the first question will resolve the others. Stated in its simplest terms: is there an enforceable contract of sale? We have concluded that the purchase offer and acceptance was no more than an option for which plaintiffs paid $1,000.00 but which they never exercised.

■ An option to purchase property is a contract wherein the owner, in return for a valuable consideration, agrees with another person that the latter shall have the privilege of buying property within a specified time on terms and conditions expressed in the option. *Corinthian Corporation v. White & Bollard, Inc.,* 1968, 74 Wash.2d 50, 442 P.2d 950. Stated in slightly different terms, an option is a right acquired by contract to accept or reject a present offer within a limited or reasonable time and is simply a contract by which owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a certain time. *Miller v. Meredith,* 1967, 149 Mont. 125, 423 P.2d 595; *Mohr Park Manor, Inc. v. Mohr,* 1967, 83 Nev. 107, 424 P.2d 101, 31 A.L.R. 3d 513, appeal after remand, 87 Nev. 520, 490 P.2d 217; 1A Corbin on Contracts, 1963 Ed., § 259, et seq.; 1 Williston on Contracts, 3d Ed., Jaeger, § 25; 8A Thompson on Real Property, 1963 Ed., § 4443.

The title of the document implies an offer and acceptance. The form itself only "proposed terms of sale" and "proposes to sell" to George and Margaret Crockett. It bears the characteristics embraced by the definitions set out. Prior to execution by Laura Higgins, plaintiffs deposited $1,000.00 as "earnest money on a 30 day escrow." After the money was deposited, Laura Higgins in the "Purchase Offer and Acceptance"—paraphrased— said, "I propose to sell you my ranch on specified offered terms. You have paid me $1,000.00 for making the ranch available. When you accept these terms by signing where I provide below, it is yours

subject only to the first right of my lessee." It is significant that the plaintiff, Mr. Crockett himself, viewed the proposal as an option in his letter of August 31, 1970, when he said, "we are about ready to give up our option money."

■ The option never materialized into a contract of sale [2] because the plaintiffs never accepted it in accordance with its terms. "Acceptance of an offer is an expression of assent to the terms thereof, made by the offeree in a manner requested by the offeror." Restatement, Contracts, Vol. 1, § 52, p. 58. The Restatement, Contracts, Vol. 1, § 61, p. 67, also states:

"If an offer prescribes the place, time or manner of acceptance its term in this respect must be complied with in order to create a contract. If an offer merely suggests a permitted place, time or manner of acceptance, another method of acceptance is not precluded."

See also Williston on Contracts, 3d Ed., Jaeger, Vol. 1, § 76, p. 248:

"Not only may the offeror dictate the consideration which he demands as the return for the promise in his offer, but he may also dictate the way in which acceptance shall be indicated. * * *"

The courts have spoken frequently on the subject. Where it is apparent that acceptance depends upon signatures and it is not signed, there is no validating of the acceptance. In the absence of signatures where intended, there is no valid contract. *Frohn v. Central Trust Co.,* 1946, 47 Ohio L.Abs. 341, 72 N.E.2d 303. A binding contract may be created by performance of acts contemplated as acceptance of an offer but where express acceptance is required by the offer to complete the contract, the fact of a subsequent acceptance must be communicated to the offeror by offeree or his agent, and a mere, private, uncommunicated assent will not affect the contract. Where purchaser's written offer to purchase realty required written acceptance, no binding contract is consummated by any oral statements of the purchaser. *Federal Farm Mortgage Corporation v. Dixon,* 1938, 185 Ga. 466, 195 S.E. 414. On retrial, the court reaffirmed its rule of required acceptance in *Dixon v. Federal Farm Mortgage Corporation,* 1939, 187 Ga. 660, 1 S. E.2d 732. If the offeror prescribes the only way in which his offer must be accepted, an acceptance in any other way is a counter offer. *Frandsen v. Gerstner,* 1971, 26 Utah 2d 180, 487 P.2d 697. When an offer states an exclusive mode by which it can be accepted and it is not accepted in that fashion, no contract is formed between the parties. *Golden Dipt Company, Division of DCA Food Industries, Inc. v. Systems Engineering and Manufacturing Company, Division of Keystone Valve Corp.,* 7 Cir. 1972, 465 F.2d 215. The court there cites Professor Corbin:

"The offeror creates the power of acceptance; and he has full control over the character and extent of the power that he creates. He can prescribe a single and exclusive mode of acceptance. It makes no difference how unreasonable or difficult the prescribed mode may be, if the offeror clearly expresses, in the terms of the communicated offer itself, his intention to exclude all other modes of acceptance. 1A. Corbin, Contracts § 88 at 373 (1963)." [3]

2. In 8A Thompson on Real Property, 1963 Ed. § 4446, at p. 272, it is stated, with respect to an option: " * * * It is a continuing offer until the expiration of the time mentioned, and its acceptance by the other party during the interval completes the contract and exhausts the option. * * * "

3. To show how exacting compliance with specified method of acceptance must be, in the old interesting case of *Sawyer v. Brossart,* 1885, 67 Iowa 678, 25 N.W. 876, 56 Am.Rep. 371, the seller wrote to the prospective buyer, "You can have that building for thirty-five hundred dollars, or the two for five thousand dollars. Let me hear from you

This court has spoken in rather general terms approving the concept appearing in the conglomerate of cases just cited. In *Trautwein v. Leavey,* Wyo.1970, 472 P.2d 776, 779, it was said:

"As stated in 17 C.J.S. Contracts, § 51, p. 713, if an offer is rejected, either by an absolute refusal or by an acceptance conditionally or not identical with the terms of the offer, or by a counter proposal, the party making the original offer is relieved from liability on that offer; and the party who has rejected the offer cannot afterward, at his own option, convert the same offer into an agreement by a subsequent acceptance."

That case involved a counter-proposal and the time for acceptance expired thereafter. In the early case of *Frank v. Stratford-Handcock,* 1904, 13 Wyo. 37, 55–57, 77 P. 134, 138, 67 L.R.A. 571, 576–577, 110 Am.St.Rep. 963, 971–973, it was said:

" * * * When the option given upon a consideration is accepted within the time allowed, *and according to its terms,* the offer and acceptance constitute a contract of sale; and the same result flows from the acceptance of an offer without consideration, if accepted before the offer is withdrawn or revoked.

* * *

"* * *

"Conditions precedent are to be strictly complied with. * * *"

(Emphasis supplied.)

In that case the optionee failed to make an acceptance and a $500.00 deposit.

at once." On the next morning the prospective buyer sent the following telegram: "Accept your offer for two buildings at five thousand dollars. Money at your order at First National Bank here. Telegraph me immediately when to expect deed." Specific performance was denied and the court said:

" * * * We think that Brossart was not bound to comply with the acceptance of plaintiff, because it was not an acceptance of the offer. It was coupled with a condition with which Brossart was not re-

But in *Covey v. Covey's Little America, Inc.,* Wyo.1963, 378 P.2d 506, 517, the rule for Wyoming was decisively zeroed in:

"* * * options are to be strictly construed and where the option is to be exercised within a stated time and in a particular manner, that must be done exactly as prescribed unless, perhaps, there is some intervening circumstance which the law recognizes as one of the impossibilities which make failure of compliance an exception to the rule. * * *"

As shown by the exhibit, the writing involved was in the form of a bilateral contract. It was typed in several copies and sent to the plaintiffs by certified mail, return receipt requested, along with an envelope to be used in mailing it back. The return receipt was signed by one of the plaintiffs. At the end of the document previously set out in this opinion was space for signing. The plaintiffs returned no signed copy to Laura Higgins before her death nor to anyone authorized to receive the same following her death. We hold the rule of this case to be that where the proposed purchasers received for their written acceptance a written form of agreement, which they did not sign, there was no acceptance of the owner's offer to sell. Since there was no acceptance of the offer, there was no contract and plaintiffs made no showing of any impossibility why they could not comply.

One cannot enforce a contract not binding upon himself. *Farago 'v. Burke,* 1933, 237 A.D. 351, 261 N.Y.S. 501,

quired to comply. It was Sawyer's duty to pay the money to Brossart. It was a direct offer, and required an acceptance in the terms of the offer. Brossart made no reply to the telegraph from plaintiff. It was his right to ignore it by silence; and all the evidence shows that from that time he treated the negotiations as at an end. Brossart's offer entitled him to have the money paid to him at Los Angeles and to deliver the deed there. * * *"

rev. 262 N.Y. 229, 186 N.E. 683. The court cited favorably:

" 'No one will contend that a contract for the sale of land, executed by the vendor, is binding upon the purchaser unless the contract is delivered to and accepted by the purchaser as a valid subsisting contract. * * * [Citing case].' "

A contract assumes an agreement, a meeting of the minds, on the thing to be done. The seller had given her consent but not the buyers, so that the writing was not a contract itself nor the evidence of any oral agreement of the parties. The plaintiffs desired to hold the defendants while they would be free to do as they pleased. Such facts do not make contracts. Had the plaintiffs accepted the contract, signed by the decedent, thus evidencing a completed agreement, or tendered their signed copy, the seller would have been obligated to sell on the terms and conditions stated in the paper signed by her.

As far as a time limit is concerned, it would appear reasonable that plaintiffs could have accepted the offer to sell between the time they received the written forms for signature and the 10th day of January, 1971, when the first payment on the contract anticipated became due. Failure to submit written acceptance within that period extinguished the option. In any event, the trial judge apparently found that a reasonable time for an acceptance had elapsed.

The essential element of an option to purchase, with consideration, is the same as that of any other contract, notwithstanding it is unilateral as an offer to sell unless, within its time limits, the optionee elects to purchase. It then becomes bilateral and binding upon both parties. An option, supported by consideration, is irrevocable during its time limit. For the period fixed by the option, the optionor has relinquished the right to sell to another and is committed to make a sale to the optionee at his election. *Braten v. Baker,* 1958, 78 Wyo. 273, 282–283, 323 P.2d 929, 931–932, reh. den. 325 P.2d 880. The option here could have ripened into a valid contract of sale because, as pointed out by appellants, the essential elements are contained within its four corners: names of the parties, land description, price, terms of payment, interest, proration of taxes, furnishing of good title and deed delivery. We do not think its form to be an agreement to make an agreement. In *Bentzen v. H. N. Ranch, Inc.,* 1958, 78 Wyo. 158, 320 P.2d 440, 68 A.L.R.2d 1213, this court approvingly quoted from Annotation, 49 A.L.R. 1464, 1465:

" ' * * * it may be stated as a general rule, that a provision in a contract which leaves open the terms of payment for future negotiation renders the contract incomplete and uncertain in one of its material features, and for that reason it is unenforceable in equity.' "

All the material features appear to be present. It is not necessary for us to make a precise decision as to whether or not the option constituted an enforceable contract. It appears that it does have those characteristics which would have made it enforceable upon acceptance by the plaintiffs, which they never did.[4]

We have a somewhat analogous situation that appeared in *Bentzen,* 78 Wyo. at 170, 320 P.2d at 445, 68 A.L.R.2d at 1120, where the court said:

" * * * The 'Agreement' although unenforceable was in effect used by plaintiffs as an option, thereby constituting

---

4. In *Steen v. Rustad,* 1957, 132 Mont. 96, 104, 313 P.2d 1014, 1019, it was said:

" * * * Whereas it is equally well-settled that if parties intended the present instrument to be a binding contract on exercise of the option, and intended only to incorporate it into a more formal contract in the future, then (assuming it has all the other requisites of enforceable contracts) equity will grant specific performance of the less formal instrument. * * * "

a detriment to the defendants in preventing them from immediately negotiating with others for the sale of the ranch. In this respect it was as effective as though it had been fully enforceable. Plaintiffs having received what at that time they thought would be an advantage, and defendants having suffered a corresponding disadvantage, plaintiffs cannot recover * * *."

The court in *Bentzen* refused specific performance based upon an invalid contract, as we do here. The invalidity here, however, rests upon plaintiffs' failure to timely accept by the method prescribed by the decedent.

The defendant heirs of Laura Higgins have never entered into any contract with the plaintiffs. Plaintiffs, through their attorneys, have submitted a form of agreement for warranty deed to them but the defendants have not signed it. There has been only feinting and sparring around between plaintiffs and defendants over a period of four years. The matter has sort of dribbled along, leaving the impression that none of them have been quite sure of their positions for various reasons. The interest of plaintiffs is understandable because, in the meantime, the land has leaped in value from about $240,000.00 in 1971 to around $448,000.00 in 1974, taking the low and high of the appraisal testimony. This suit was not filed until April 29, 1974. The plaintiffs let their rights expire. The court will not make a contract for them. *Otis Oil & Gas Corporation v. Maier,* 1955, 74 Wyo. 137, 284 P.2d 653.

The plaintiffs' failure to sign and their conduct tend to support the conclusion that the plaintiffs did not intend to be bound by a contract. It is reasonable to believe that plaintiffs had no intention of asserting any rights under the contract until it became financially advantageous for them to do so. One of the defendants testified that plaintiff George Crockett said he would go ahead with the agreement whenever he could clear $50,000.00 on the transaction.

Since there was no contract, there is no need to discuss the other issues submitted by plaintiffs other than how they may have been touched upon incidental to a determination that there is no contract upon which to base either an action for specific performance or damages for breach of contract.

Affirmed.