Lewis A. WHEELER,
Appellant (Plaintiff),

v.

Ronald D. WOODS, Debra Woods Lane, Dee Stadnik, and Key Real Estate Company, Ltd., Appellees (Defendants),

Virgil L. Payne (Defendant).

No. 86–18.

Supreme Court of Wyoming.

Aug. 12, 1986.

Don W. Riske, Cheyenne, for appellant.

Kay Snider Coffman, Cheyenne, for appellees Ronald D. Woods and Debra Woods Lane.

Bert T. Ahlstrom, Jr., Cheyenne, for appellees Dee Stadnik and Key Real Estate Co., Ltd.

Before THOMAS, C.J., and BROWN, CARDINE and MACY, JJ., and GUTHRIE, J., Retired.

GUTHRIE, Justice, Retired.

This is an appeal from the judgment of the district court dismissing the claim of appellant, Lewis A. Wheeler, against Ronald D. Woods, Debra Woods Lane, the Key Real Estate Company, Ltd., and Dee Stadnik. Appellant's claim against the defendants Ronald D. Woods and Debra Woods Lane rests in an asserted purchase contract covering a house in Cheyenne, which was owned by Woods and Lane, and upon which he claimed he had a binding purchase contract. The claims asserted against Key Real Estate Company, Ltd., and Dee Stadnik were based upon a claimed tortious

interference with a contract relationship and willful breach of duty owed to him.

The judgment will be affirmed.

The transaction from which these claims arose began on December 18, 1983, when Virgil Payne submitted an offer to purchase the real property of Ronald Woods and Debra Woods Lane, which was located in Cheyenne. This offer was transmitted to Dee Stadnik, an employee of Key Real Estate Company, Ltd., (hereinafter Key) because the property was listed with her, and she was acting as agent for the sellers. Ruth Leypoldt, as Payne's agent, transmitted this to Stadnik.

The offer was for the sum of $90,000 with two conditions included, i.e., that Payne could secure an F.H.A. loan in the sum of $64,500 and that he could sell his present home. It was contingent upon these conditions and was not to be binding unless and until they had been satisfied. The sellers did not accept this offer, but instead made a counteroffer, which among other things provided that, in the event the sellers received a more acceptable offer, Payne was to be notified. If (within 72 hours after receiving notice) Payne did not "remove the contingency involving the sale of his residence and proceed with [his] purchase," then the counteroffer would become "null and void."

Thereafter on March 9, 1984, appellant made an offer on the property in the sum of $80,000 with cash on closing. This offer was delivered to Stadnik by John White, Wheeler's agent. It required the acceptance of this offer by the sellers in writing on or before midnight March 11, 1984, to become binding. Stadnik was unable to advise Ronald D. Woods of this offer until the afternoon of March 11th. Woods advised her that he would accept the offer if the Payne contingencies were not removed. Debra Woods Lane was not advised of this offer until sometime on March 12, when two mailgrams were sent to Stadnik advising her that they would accept the offer but they, however, included a limitation as to the brokerage commission and the assumption of the existing mortgage. They

were also conditioned upon the removal of the contingencies by Payne, who had 72 hours in which to do this.

It was appellee Woods' intention to accept the Wheeler offer as a "back-up offer," apparently if Payne did not remove the contingencies or close the sale. These telegrams were received March 13th.

It was then concluded by Stadnik and Dave Cameron, her managing broker, that there was no binding contract which had been made with Wheeler, and on March 15 Payne, the original offeree, negotiated a contract which provided for a much better net return to the owner. This sale was closed upon March 27, 1984. On March 13, Stadnik had advised White as appellant's agent that the property was then sold to Payne under the original purchase offer and agreement. On March 21, 1984, appellant gave notice by letter from his attorney, Don W. Riske, that he was prepared to close the sale upon his accepted offer and in conformity with the terms thereof.

On March 27, both Cameron and Stadnik responded to this notice by letter apologizing for the misunderstanding and denying any deceit or intention to deceive. Appellant then brought suit against Payne, Ronald D. Woods, Debra Woods Lane, Dee Stadnik, and Key as defendants. Specific performance and conveyance of the premises was sought from Payne. This claim was dismissed during the proceedings, and appellant as plaintiff pursued his claim against Woods and Lane for damages for its breach, claiming to have an enforceable contract for the purchase of these lands. As to Key and Stadnik, damages were claimed for an alleged willful breach of duty and intentional interference with the contract rights of the plaintiff; the alleged failure of Key to properly supervise the activities of the defendant Stadnik; and a claim for penalty of three times the commission received pursuant to § 33–28–114, W.S.1977, and the sum of $100,000 in punitive damages.

In disposing of the claim against defendants Woods and Lane, the trial judge stated in his conclusions of law:

"1. That the plaintiff's offer to purchase dated 9 March 1984, was a written document which specifically provided for acceptance by the defendants by midnight March 11, 1984, and further specified acceptance by written signature thereon by the sellers; a telephone call to the Western Union to send a mailgram does not constitute an acceptance 'in writing';

"2. A purported acceptance of a written offer to purchase, when the written offer to purchase specifies that the acceptance must be 'on or before midnight of March 11, 1984,' is not such an acceptance as creates a binding contract when the 'acceptance' was sent by mailgram telephoned to the Western Union on March 12th and received on March 13th;

\*      \*      \*      \*      \*      \*

"4. The plaintiff's offer expired at midnight March 11th and thereafter there remained no offer open that could be accepted by the sellers."

## THE CLAIMED CONTRACT

We must first consider if there was an enforceable binding contract between Wheeler and Woods and Lane. It must be remembered that the offer upon which rests appellant's claim was made in the terms and upon the conditions satisfying Wheeler's wishes and desires. Although he knew of the shortness of the time that he was requiring for acceptance of the offer and must have known that his time limitation encompassed a weekend, and that time for acceptance fell upon a Sunday at the hour of midnight, he still inserted those conditions.

Persons should be able to contract freely and upon such terms as they wish. No court should disregard the plain, obvious, and understandable words of any person to accomplish what they might personally believe to be proper. To do this is to deprive persons of their free right to contract, and appellant created his own time limitation for such acceptance.

It is apparent that if the time limitation is said to control in this case that any discussion of the effect of reliance upon the telegrams is not material. Admittedly they were sent sometime on Monday, March 12, at least some sixteen hours later than the acceptance deadline.

When an appeal involves a simple question with a readily apparent answer, we do not perceive it to be a sin nor a violation of judicial propriety to allow it to retain that status and to make a simple and understandable disposal. The offer of appellant expired on midnight, March 11, 1984, upon his own terms. There was no written acceptance made by Woods and Lane prior to that time. Because of our view of this case, the question of the legal effect of the telegrams (mailgrams) is moot. Their sufficiency as an acceptance is not a matter required for disposal, and expressions thereon would be mere dicta.

Twice in the past few years, this court has had occasion to consider the acceptance of an offer and the requirement that an acceptance be made in the terms therein expressed. In the case of *Crockett v. Lowther,* Wyo., 549 P.2d 303, 309 (1976), the court cited with approval and adopted the rule stated in Restatement, Contracts § 61, p. 67 (1932)[1], as follows:

> " 'If an offer prescribes the place, time or manner of acceptance its term in this respect must be complied with in order to create a contract. * * * '" See authorities cited in *Crockett v. Lowther,* supra.

*Crockett,* supra, cites *Trautwein v. Leavey,* Wyo., 472 P.2d 776, 779 (1970), which also spoke to this question and cited 17 C.J.S. Contracts, § 51, p. 713, which reiterates the same rule as that from the Restatement appearing in *Crockett.* That case further includes a rather obvious but common sense statement which sets out a most compelling reason simply stated for enforcement of such limitations on an offer in the following fashion:

> "If it could be said acceptance on the part of buyers would be good a day or two after the deadline of December 6,

the same logic would dictate that acceptance a year or two after December 6 would be equally good. * * * " *Trautwein v. Leavey,* supra, at 780.

It would be possible to cite numerous texts and other decisions recognizing this rule. The case of *Callender v. Kalscheuer,* 289 Minn. 532, 184 N.W.2d 811, 812 (1971), states this rule as shortly, simply, and understandably as possible, when that court said:

> " * * * If the time for acceptance of an offer is limited, as here, the limit is absolute and time is of the essence. [Citing authorities.] * * * " See also *Morrison v. Rayen Investments, Inc.,* 97 Nev. 58, 624 P.2d 11 (1981); *Houston Dairy, Inc., v. John Hancock Mutual Life Insurance Company,* 643 F.2d 1185 (5th Cir.1981).

■ Appellant further in his appeal contends, if the acceptance to his offer was late and the first claimed contract is not enforceable, that the mailgrams (telegrams) constituted a counteroffer, which the owners-sellers accepted as evidenced by their conduct. This is a second shot and an afterthought by virtue of which appellant now seeks salvation. This theory was not asserted by plaintiff by way of pleadings, briefs, or argument. It did not appear in the suggested findings of fact and conclusions of law submitted to the court by appellant's attorney at the time judgment was entered. It was injected as a new issue at the time of the presentation of the Motion for New Trial. It was clearly not in the contemplation of appellant on March 21 when he demanded performance of the claimed contract arising from his offer, acceptance and receipt, and its alleged lawful acceptance and which we have heretofore held did not create an enforceable contract. If the court were at this time to recognize this claim, it would create a contract upon its own. It is hard to conceive of a "meeting of the minds" of which the claimant was unaware some ten days later, and, stranger still, that he should be a beneficiary of such an agreement of which he

---

**1.** Now found in Restatement, Second, Contracts     § 60, p. 147 (1981).

then had no present knowledge under the asserted claim.

There are many cases in which this court has held that unless it involves a jurisdictional matter that the court should not consider on appeal questions which were not raised in the trial court. *Valentine v. Ormsbee Exploration Corp.*, Wyo., 665 P.2d 452, 462–463 (1983), and cases collected under 1 West's Wyoming Digest, Appeal & Error, keynumber 169, at 49–51 (1985 Cum.Annual Pocket Part). Absent some most compelling reason an unsuccessful party should not in fairness to the trial court and particularly to the adverse party be heard to assert and have litigated on appeal some issue or theory which he has neglected to put forward before the conclusion of the trial and entry of a judgment.

█ Appellant cannot relieve himself from the operation of the rule requiring presentation of the question to the trial court by raising it for the first time in his Motion for New Trial. It was not a proper subject for disposal by such motion.

"* * * a party may not seek a second trial on the basis of a theory not urged at the first trial." (Footnote omitted.) Wright & Miller, Federal Practice and Procedure: Civil § 2805, p. 40 (1973). See also *DeWitty v. Decker*, Wyo., 383 P.2d 734, 739 (1963).

There is no reason to disturb the judgment in favor of Woods and Lane.

## THE CLAIM AGAINST KEY REAL ESTATE COMPANY, LTD., AND STADNIK

█ After the finding that there was no binding agreement between appellant and Ronald D. Woods and Debra Woods Lane, the property owners, the trial court dismissed the asserted claims against Key and Stadnik on the ground that he had no standing to pursue the remedy with which disposal we also agree.

In pursuit of his hopes for reversal upon this phase of the case, appellant submits two queries to the court seeking an affirm-ative answer to either or both. They are herein set out:

"Whether the trial court erred in holding that Stadnik and Key did not breach any duties owed by them to appellant."

"Whether the appellant had standing to challenge appellees Key Real Estate and Dee Stadnik's handling of the purchase between Payne and Woods and Lane insofar as that handling constituted interference with prospective contractual relationships."

Appellant bases his claim against these two defendants upon the fact that Stadnik advised his agent, White, that the property had been sold pursuant to the original Payne offer and that this was not true because in fact there was no such contract at the time this advice was given.

In his brief appellant summarizes the basis of his claim against these defendants as follows:

"The affirmative and passive, negligent and intentional, misrepresentations of Stadnik and Key excluded Appellant from vying for the purchase of the Woods and Lane property. Appellant had a right to expect that Stadnik and Key would give him the same opportunities to purchase that property as they gave to Virgil Payne."

Appellant makes his reliance upon *Hagar v. Mobley*, Wyo., 638 P.2d 127 (1981), from which he extracts the rule that there is a "* * * duty owed by real estate brokers and salesmen to *third parties (such as Appellant herein)* with whom they deal." (Emphasis added.) This distillation of the holding in that case simply does not follow. It does not cover a party in the position of the appellant herein. We will not stretch that holding beyond the question presented and decided in that case. He cannot rely upon his categorical assertion that this rule includes "such as appellant herein." Specifically that case is not authority creating a duty upon realtors or agents except as to purchasers. It does adopt that statutory standard as applicable to purchasers with whom they deal. That case recognizes a

duty between the broker or licensed salesperson and a purchaser, no more, no less.

The court held in the context of the question raised that the licensing statutes were applicable between the brokers and agents and purchasers specifically and so stated, when the court said:

"We adopt the legislative policy of § 33–28–111, W.S.1977, as standards by which licensed brokers and salesmen may be held liable to purchasers." Id. at 137.

Since appellant is not a purchaser in this case but an unsuccessful bidder, he can find no comfort or support for his claim through *Hagar v. Mobley*, supra.

Appellant cites no other authority in support of his claim that defendants Key and Stadnik had a duty which they violated in telling White that there was a binding contract between Payne and the owners before that contract was entered into. He emphasizes for the court the holding in *Tennant v. Lawton*, 26 Wash.App. 701, 615 P.2d 1305, 1309–1310 (1980), which is cited with approval in *Hagar v. Mobley*, supra, insisting that that case implicitly holds that a broker or salesman must not misrepresent that information which "is pivotal to the transaction from the buyer's perspective." This is clearly applicable to Payne alone.

Appellant does not cite any authority which would recognize such rights or any duty to an unsuccessful bidder whose earlier offer had not been accepted. It might appear that this proposition is more novel than logical.

Appellant attacks the trial court's holding which held adversely to his asserted right of recovery for interference with his "prospective contract relationship." In this phase of his brief he cites *Martin v. Wing*, Wyo., 667 P.2d 1159 (1983), quite properly as holding that a valid contract is not always necessary to recover for such interference. The court is unable, however, to apply the holding in the Wing case to the instant situation, which is factually so completely different.

In this case, appellant is an unsuccessful claimant under an asserted contract for the purchase of the premises which the court has held not viable. Appellant, however, claims by virtue of his position that he is entitled to some rather undefinable or indefinite right to vie for the purchase or the opportunity to purchase these lands from Payne, but he does not suggest what probable value those might have.

If it were to be conceded arguendo that Stadnik and Key did have some duty which they intentionally breached by depriving the appellant herein of rights of "vying for the purchase" or the right to some opportunity to purchase the house from Payne, the result remains the same. We are puzzled what might be the measure of damages for such loss, as there is no evidence in this record upon which such an award could rest short of a crystal ball reading or astrological chart. It would necessarily involve complete speculation by the finder of fact which has been so often condemned. *Krist v. Aetna Casualty and Surety*, Wyo., 667 P.2d 665, 672 (1983), and cases cited therein. *Erickson v. Magill*, Wyo., 713 P.2d 1182 (1986).

*Erickson v. Magill*, supra, held that it was mandatory in order to recover for interference with contract relationships that all the necessary elements for such claim be proven. One of these elements is "resultant damage." Absent such element there could be no recovery.

As a general rule there must be some real possibility of benefit. In W. Prosser and W. Keaton, The Law of Torts § 130, p. 1006 (5th ed. 1984), the authors mention that in cases of this character recovery has been denied where there was "no sufficient degree of certainty that the plaintiff ever would have received the anticipated benefits."

## CLAIMS FOR COSTS OF APPEAL

■ Appellees herein have requested the court to determine that this is a frivolous appeal and without merit and ask for enforcement of penalties and costs thereunder. Were it not for the appeal upon the question of the existence of a valid contract between these parties, we would be so in-

clined to hold that this is a frivolous appeal. The court does not deem the authorities herein cited in support of this claim against Key and Dee Stadnik applicable. Appellant makes reliance upon statements out of context and without regard to the factual situations in the cases cited. It ill behooves any attorney shielded by the cloak of privilege to charge such persons with breaches of duty and misconduct while acting as a broker or an agent of the landowner. Such statements could damage them in their profession, occasion much worry, and require expenditures and time for defense of an appeal pursued without citation of cogent, applicable authority in support of his position.

Judgment affirmed.