Lyle W. Bentzen and Elizabeth M. Bentzen,

*Plaintiffs and Appellants*

v.

H. N. Ranch, Inc., a Corporation, and Edward E. Birchby,                    *Defendants and Respondents,*

Lyle W. Bentzen and Elizabeth M. Bentzen,

*Plaintiffs and Respondents,*

v.

H. N. Ranch, Inc., a Corporation, and Edward E. Birchby,                    *Defendants and Appellants.*

(Nos. 2780 and 2781; January 14, 1958; 320 Pac. (2d) 440)

160

For the plaintiffs and appellants in Case No. 2780 and plaintiffs and respondents in Case No. 2781, the causes were submitted upon the briefs of Holstedt & Schwartz of Sheridan, Wyoming, and oral argument by Mr. Robert E. Holstedt.

For the defendants and respondents in Case No. 2780 and for defendants and appellants in Case No. 2781, the causes were submitted upon the briefs and oral argument of R. G. Diefenderfer, of Sheridan, Wyoming.

Heard before Blume, C. J., and Harnsberger and Parker, JJ.

162

## OPINION

Mr. Justice Parker delivered the opinion of the court.

Plaintiffs, Lyle W. and Elizabeth M. Bentzen, brought an action against H. N. Ranch, Inc., and Edward E. Birchby for a declaratory judgment asking for a determination of the rights and liabilities under an "Agreement for Warranty Deed"[1] signed by them and by Birchby as president of the ranch. Plaintiffs asked that the instrument be adjudged to be of no force and effect and that they recover $1,000 paid to the defendants at the time of the signing. To this petition defendants filed an answer alleging both that the instrument was valid and that defendants were estopped to deny its validity; at the same time they interposed a counterclaim, reiterating the validity of the instrument, alleging a $15,000 loss to defendants by reason of a subsequent sale of the ranch for a figure less than

---

[1]Photostatic copy of the face of the instrument (omitting the legal description of the real property) follows this opinion.

that stated in the disputed instrument, and asking for judgment of $14,000.

On the trial of the cause, the court found against plaintiffs on the petition and against defendants on the counterclaim, decreeing that the parties take nothing and that each pay their own costs. From this judgment both parties have appealed to this court—plaintiffs from the adverse finding on their petition by Case No. 2780, and defendants from the adverse finding on their counterclaim by Case No. 2781.

Plaintiffs' specifications of error complain that the judgment is contrary to the evidence and contrary to the law, and defendants' specifications urge similarly regarding the court's failure to sustain their counterclaim.

In effect, plaintiffs insist that the "Agreement" was a nullity and that the $1,000 down payment should be refunded, as money had and received by defendants to their unjust enrichment, while defendants urge that said instrument was "valid, binding, and enforceable." Accordingly, the principal question to be resolved is narrowed to a determination of whether or not there was in fact an enforceable contract. This will depend primarily upon the nature of the instrument signed and secondarily upon any conversations, dealings, and activities, between the parties which under the circumstances are admissible and can be said to have had a legal effect upon the "Agreement."

On the first point plaintiffs quote 12 Am.Jur., Contracts, §§ 23, 24, and 64; 17 C.J.S., Contracts, § 49, to substantiate the rule that an agreement to make a future contract is not binding unless the same is definite and certain as to all essential terms and conditions;

and defendants counter with the rule found at 17 C.J. S., Contracts, § 36, p. 370, that a contract is not void because performance as to particular details is left subject to subsequent agreement of the parties. However, both the citations and the cases to which the parties refer are general in nature and deal with problems differing from the situation at hand, furnishing little solid ground as precedent in this instance—nor is it helpful that we have heretofore determined the securing of a contemplated loan by a purchaser not to be a condition precedent to the payment of the balance of the purchase price of realty. See Pegg v. Olson, 31 Wyo. 96, 223 P. 223.

The validity and enforceability of a contract for the sale of land which leaves open the terms of payment for future negotiations has had some attention from the courts; and a compilation of cases on the subject is found at Annotation, 49 A.L.R. 1464, 1465, wherein that authority says with some certainty:

"* * * it may be stated as a general rule, that a provision in a contract which leaves open the terms of payment for future negotiation renders the contract incomplete and uncertain in one of its material features, and for that reason it is unenforceable in equity."

Although the annotation deals with specific performance rather than breach of contract, the pivotal question in each of the cases reviewed is the certainty or uncertainty of the understanding between the parties. Accordingly, the principles under review would seem to be determinative of the existence of a contract in each instance and would, therefore, be controlling in the present controversy. The case of Huff v. Shepard, 58 Mo. 242, therein cited, discusses an instance in which the sale of real and personal property was for a

specified sum with the balance of the purchase money to be paid on such terms as should be agreed upon between the parties. The court there held that the alleged purchaser so far as he had bound himself at all had done so upon the express stipulation that the terms of payment would be such as he might thereafter consent to, and that there was, therefore, no agreement between the parties. In Tansey v. Suckoneck, 98 N.J. Eq. 669, 130 A. 528, 529, the court in discussing a contract for the sale of real estate in which the terms of payment had been left to future negotiation said that the dealings between the parties were not sufficient to support a decree for specific performance and quoted Brown v. Brown, 33 N.J.Eq. 650, 655, for the statement that:

" 'the bargain must have been completely determined between the parties, and its terms definitely ascertained. So long as negotiations are pending over matters relating to the contract, and which the parties regard as material to it, and until they are settled and their minds meet upon them, it is not a contract, although as to some matters they may be agreed.' "

The annotation, dealing with numerous citations to cases more or less analogous to the present controversy, requires no detailed analysis since the general principle is clearly established.

Other pertinent cases are: Edgcomb v. Clough, 275 Pa. 90, 118 A. 610; Drake v. Sop, 131 Misc. 573, 227 N.Y.S. 576; Berlinger v. Moffitt, 82 N.Y.S.2d 833; N.E.D. Holding Co. v. McKinley, 246 N.Y. 40, 157 N.E. 923; Ansorge v. Kane, 244 N.Y. 395, 155 N.E. 683, 245 N.Y. 530, 157 N.E. 845; Fisher v. Long, 294 Ky. 751, 172 S.W.2d 545; Jones v. McCown, 251 Ala. 581, 39 So.2d 14; Whitson v. Owens, 94 Fla. 1201, 115 So. 512; Stanaland v. Stephens, 78 Ga. App. 68, 50 S.E.2d

258; Esselstyn v. Meyer & Chapman State Bank, 63 Mont. 461, 208 P. 910; Merchants' Bank of Canada v. Sims, 122 Wash. 106, 209 P. 1113; Lee v. Lee Gold Mining Co., 71 Mont. 592, 230 P. 1091; Noble v. Reid-Avery Co., 89 Cal.App. 75, 264 P. 341; Long Beach Drug Co. v. United Drug Co., 13 Cal.2d 158, 88 P.2d 698, 89 P.2d 386; Bonk v. Boyajian, 128 Cal.App.2d 153, 274 P.2d 948, 949, 950. The last-named case dealt with an option to purchase realty at the price of $7,000 with the down payment of $3,000 and " 'Monthly payments on the balance due to be agreed upon at the time of purchase * * *.' " Although the matter there under discussion was an option rather than a sale, we think the court's statement bears some relevance to the present situation:

"* * * Where, in a business transaction, an important item is reserved for future determination no enforceable obligation is thereby created for 'neither law nor equity provides a remedy for breach of an agreement to agree in the future' * * *"

Having in mind then the law applicable to land-purchase agreements indefinite as to the method of paying deferred balances, we review the contract here in controversy. The wording of the "Agreement" in the present case on this point was as follows: "Balance payable by future agreement on or before January 1, 1954." Just what this clause meant is a matter of complete disagreement between the parties. Defendants' counsel says it meant "the parties would later agree on the manner of payment, with the entire balance being payable not later than the stated date," but that plaintiffs took the position that the *future agreement* was to be entered into by January 1, 1954. Even though we should assume for the purpose of discussion that defendants' contention is correct, the matter is nevertheless ambiguous; and we would be puzzled to

know why the defendant Birchby, who wrote the inter-lineation, used the words *by future agreement* if he now in effect claims those words to have no meaning. Another perplexing phase of the situation is that defendants' counsel on the one hand now relies upon the parol evidence rule to prevent "alteration or denial" of the "Agreement," and on the other hand insists "that uncertainty could be resolved by proof and the validity of the instrument was not affected thereby." Thus, it is urged that the conversations at the time the signatures were affixed not be considered and simultaneously urged that such conversations be used as an explanation to show the method of payment. However, these matters are not crucial. The parties conceded the well-recognized rule that the findings and judgment of the trial court will stand if there is any evidence to support them, and we think the rule is applicable here. The evidence of what was and was not said at the time the signatures were affixed, whether proper or not, went in without objection; and it seems clear that the trial court would have been justified in resolving at its discretion that the understanding between the parties was either (a) definite, or (b) fatally indefinite—depending upon the credence it might properly allocate to the conflicting testimony of different witnesses. We think the findings and judgment fairly connote the indefiniteness of the arrangement between the parties and are beyond attack at this time.

Defendants' citations of authority seem to adopt the view that the matter of payment was a mere detail. As indicated by our numerous citations, we do not deem this so; and the question of the method of making deferred payments seems to be even more compelling in a sizeable transaction wherein the method of amortization, the time to be consumed thereby, and the interest to be paid, are, from a practical standpoint, important

and often controlling features. The bald writing with the disputed clause is deficient in meaning and a determination of which of the conflicting explanations should be accepted was the prerogative of the trial court. Thus, there is no proof of a sufficiently definite contract to support either the rights of plaintiffs to enforce or the rights of defendants to damages for breach thereof.

Defendants have argued that the transaction was in fact sale of the corporate, capital stock rather than a sale of realty and as such was valid in any event. The authorities and citations mentioned as support for the argument are not compelling.

We proceed then to plaintiffs' argument by which they seek to substantiate their claim for the return of the $1,000 paid to defendants. They insist that this was an unjust enrichment to defendants and that the action in assumpsit although one at law is governed by equitable principles, stating that if *in equity and good conscience* the plaintiffs are entitled to recover the money then the defendants should be required to pay it over. Cases which they cite for that principle, namely, Anderson v. Bell, 70 Wyo. 471, 251 P.2d 572, and Tobin v. Town Council of Town of City of Sundance, 45 Wyo. 219, 17 P.2d 666, 84 A.L.R. 902, discuss the requirement that recovery under such circumstances must be based on equity and good conscience, the placing of the other party in statu quo, and the fact that the claimant to be entitled to recover must have received nothing of value. Applying these equitable principles to the instant case, we are unable to perceive why the plaintiffs should be entitled to the return of the money for they did in fact receive something of value for it. They sought to effect a delay in defendants' negotiations with other parties for the sale of

the ranch, during which time the plaintiffs might ascertain whether or not under the circumstances they desired to proceed with the purchase themselves. Lyle W. Bentzen on cross-examination said:

"It was merely a purchase agreement to hold this thing open until we had a chance to inventory and find out whether we could finance and buy the ranch."

Thus, it appears that the $1,000 advanced by plaintiffs to defendants was in fact quid pro quo and not an unjust enrichment of defendants. The "Agreement" although unenforceable was in effect used by plaintiffs as an option, thereby constituting a detriment to the defendants in preventing them from immediately negotiating with others for the sale of the ranch. In this respect it was as effective as though it had been fully enforceable. Plaintiffs having received what at that time they thought would be an advantage, and defendants having suffered a corresponding disadvantage, plaintiffs cannot recover the money paid on the equitable principles for which they contend.

We have previously discussed the invalidity of the indefinite "Agreement" insofar as enforcement is concerned. Extended discussion is, therefore, unnecessary regarding defendants' right to any damages for breach. It is elementary that there is no contract so long as something remains to be done to establish contract relations and that the right to maintain an action for damages for breach of an agreement depends upon whether the agreement contains all the essentials of an enforceable contract. See 12 Am.Jur., Contracts, §§ 23 and 388.

The trial court herein found that the plaintiffs had failed to sustain the allegations of their petition and that defendants had failed to sustain the allegations of

their counterclaim and accordingly decreed that both plaintiffs and defendants take nothing. For the reasons herein stated, we concur with the result reached by the trial court.

The judgment is affirmed.

*AGREEMENT FOR WARRANTY DEED—Form No. 16*

THIS AGREEMENT, Made and entered into this ..28th.. day of...October. ... ..... 19.53., by and between
.................The H. N. Ranch Incorporated, a Wyoming Corporation,....... ...........

of ... .. ... .. ... ...., Sheridan...... .......... County, State of. Wyoming , of the first part, and

of. .. . . Sheridan ...County, State of Wyoming , of the second part,
WITNESSETH, That the part y of the first part, for and in consideration of the sum of (\$ 7000 .00 )
........................ DOLLARS
in hand paid, as part of the purchase money for the real estate hereinafter described, and upon the EXPRESS CONDITION, which is hereby declared a condition precedent, TIME being the ESSENCE of such condition; that the said part ies of the second part, their heirs, executors, administrators or assigns, shall, and do well and faithfully perform the covenants and agreements hereinafter mentioned on their part to be kept and performed; do hereby for Itself .and its .....heirs, executors, administrators and assigns, covenant, promise and agree to convey and assure to the said part ies of the second part by a good and sufficient Warranty Deed, subject, however, to of the taxes of A. D. ... and subsequent taxes, to and for the following described real estate, situated in Sheridan.. .. County, State of Wyoming, to-wit:

1. To convey all Deeded Land described hereon, together with all improvements, water rights, and appurtenances appertaining thereto by a merchantable Warranty Deed and assignment of all outstanding shares of Stock (400 shares) in said HNRanch Inc.,
~~2. To assign all right, title, interest and estate in the HN State lease. (120.97 acres)~~
3. To convey all right title, interest and estate in the Mountain Permit (113 head).
4. To assign over EB brand together with all irons for same.

*Balance payable by future agreement on or before Jan, 1st 1954.*

SOLD FOR *One hundred forty thousand* DOLLARS (\$ *140,000.00* )
and to include all improvements now on said property and such other improvements as may hereafter be placed on said premises, the latter to be held as additional security in case of failure to fulfill the covenants of this contract.

And the part ies of the second part do hereby, for themselves and their heirs, executors, administrators and assigns, covenant, promise and agree to and with the said party of the first part, Its heirs, executors, administrators, and assigns, to pay the balance of the consideration price for said premises, and all taxes and assessments when due, as follows, to-wit:

1. To assume the balance due to the Kansas City Life Insurance Company in the amount of about \$34,000.00 , interest at Four percent, and payable yearly at the rate of \$3,500.00 interest and principal, according to its terms and conditions.

2. Pay balance of \$ *Henry Burgo*, of purchase price to E. E. Birchby and James Birchby upon their tendering: *to pay balance of cash on or* Dec 1, 1953
   1. All outstanding shares of HN Ranch Inc., Stock (400 Shares) , and
   2. A warranty Deed to all real property deeded showing good merchantible title, only subject to above mentioned mortgage, together with Abstract Certified to date showing good fee simple merchantible title.

Payable at the office of E. E. Birchby with interest at the rate of per cent per annum from date Interest payable . If principal or interest is not paid when due, the same to draw per cent interest per annum from maturity until paid. Fifty percent of all mineral rights Present Grantors agree to spay all 1953 Taxes due. reserved inc Edward B. Birchby.
All insurance to be pro-rated as of date of transfer. to be .... .... .. ... E. E. B. C.'s
~~All other personal property, other than mentioned above to be retained by Grantors~~
~~with right to use premises until January 1st, 1954, when second shall be possessed of the~~
PROVIDED, ALWAYS, and these presents are upon the express condition, that in case of failure of said part ies of the second part, their part to be performed, then said part y of the first part, Its heirs, executors, administrators or assigns, shall have the right to declare this contract void, and thereupon to recover by distress upon the premises or otherwise all the interest which shall have accrued upon this contract up to the day of declaring it void, as rent for use and occupation of said premises; to hold and retain all moneys paid on this contract by said part ies of the second part, as liquidated damages, and to take immediate possession of the premises; to regard the person or persons in possession on such termination of the contract or tenant or tenants holding over without permission; and to recover all damages sustained by holding over without permission, or by reason of any waste or damage committed or suffered on said premises.
The part ies of the second part agree to keep the buildings on said premises insured in a sum not less than
........ Dollars, in favor of and payable to part y of the first part, as their interests may appear.
This contract issued in duplicate and not transferable without permission in writing of first party first had and obtained.

In presence of                                 H. N. Ranch Incorporated
.... .. Mary B Birchby                          Edward E. Birchby
.......... .. Secretary                         ....... President ..
Je Ann Alligier                                 ...........

INDIVIDUAL ACKNOWLEDGMENT

STATE OF . . . } ss.
County of ... ... .... .. .... .....}
On this . . day of . .. 19 ., before me personally appeared
.. .. ...... ... . ...... ...... .. .. .. ... ... .......... ..............- ...... ............... .... .
to me personally known to be the person described in and who executed the foregoing instrument and acknowledged that executed the same as free act and deed, including the release and waiver of the right of homestead, the said wife having been by me fully apprised of her right and the effect of signing and acknowledging the said instrument.
Given under my hand and seal, this day of .. , A. D. 19..
.. ... .... .. .. . . ...... .. ..... Notary Public.
My commission expires on the day of . . ..A. D. 19. .

*PLTF's EX No 1 filed*