2005 WY 63

Ernest M. LINTON and Carole J. Linton,
Appellants (Plaintiffs),

v.

E.C. CATES AGENCY, INC.,
Appellee (Defendant).

No. 04–163.

Supreme Court of Wyoming.

June 6, 2005.

Stephen R. Winship, of Winship & Winship, P.C., Casper, Wyoming, for Appellants.

Marvin L. Bishop, III, of Bishop, Bishop & Yaap, Casper, Wyoming, for Appellee.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Ernest M. Linton and Carole J. Linton (Lintons) appeal the district court's ruling granting summary judgment to E.C. Cates Agency, Inc. (Cates). They contend the district court erred in finding that a Lease Option to Purchase agreement entered into between the parties was unenforceable. We reverse.

[¶ 2] The parties present numerous issues. Upon our review, we find that the dispositive issue is:

Did the district court err when it found that no genuine issues of material fact existed and granted Cates' motion for summary judgment?

### FACTS

[¶ 3] In October, 1995, the parties entered into a written agreement entitled Lease Option to Purchase. The agreement states in pertinent part:

This agreement, made on the 4th day October 1995 between E.C. Cates Agency, Inc. of 5122 North 17th St. Phoenix, AZ 85016–4006 (seller) and Ernest and Carole Linton of 7600 East Lake St. Evansville, Wy 62636 (buyer): WITNESSETH:

The seller agrees to lease the following described real property situate[d] in Natrona County Wyoming:

[Legal Description]

Seller agrees to lease the above property to the buyer for the sum of $125.00 (One hundred twenty-five dollars) per month, beginning September 1995, and to accept 75% of this lease payment toward the down payment to purchase the above property for a total sale price of $20,000 (Twenty thousand dollars). The buyer agrees to pay the balance of $3,000 (Three thousand dollars) down toward the purchase price in July of 1996 and enter into a sales agreement with the seller.

In witness whereof, this agreement has been executed by the respective parties the day and year first above written.

[Signatures and dates]

[¶ 4] The real property described in the agreement comprises approximately 30 acres and is located adjacent to the Lintons' home. Pursuant to the agreement, the Lintons were required to exercise their option to purchase in July, 1996. Their daughter was killed in an automobile accident in June, 1996. Her death resulted in emotional and negative financial consequences for the Lintons. According to the Lintons, E.C. Cates, the President of the E.C. Cates Agency, Inc., was understanding and sympathetic. He agreed to waive the option payment requirement. The Lintons contend that Mr. Cates orally agreed to modify the contract and agreed to sell the property to them if they continued to make the $125.00 monthly payments.

[¶ 5] The Lintons continued to make the payments. They rebuilt and maintained a fence on the property. In June, 2003, the Lintons observed Mr. Cates showing the property to a potential buyer. The Lintons offered to pay Mr. Cates the balance of the purchase price. Mr. Cates refused to sell the property to the Lintons and denied any extension of the option deadline. Despite the

refusal, Mr. Cates continued to accept the $125.00 monthly payments. The Lintons initiated this action seeking enforcement of the agreement. Cates countered with an action for quiet title and ejectment and filed a motion for summary judgment. The district court granted Cates' motion for summary judgment finding that the Lease Option to Purchase agreement was "incomplete, uncertain, indefinite and unenforceable." We will set forth additional facts as necessary in our discussion.

## STANDARD OF REVIEW

[¶ 6]   Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if proven, would establish or refute an essential element of a cause of action or a defense that a party has asserted. *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, ¶ 9 (Wyo.2002).

[¶ 7]   We evaluate the propriety of a summary judgment by employing the same standards and by examining the same material as the district court. *Id.* We examine *de novo* the record, in the light most favorable to the party opposing the motion, affording to that party the benefit of all favorable inferences that may be drawn from the record. *Roussalis v. Wyoming Medical Center, Inc.*, 4 P.3d 209, 229 (Wyo.2000). If upon review of the record, doubt exists about the presence of issues of material fact, that doubt must be resolved against the party seeking summary judgment. *Id.* We accord no deference to the district court's decisions on issues of law. *Metz*, ¶ 9.

## DISCUSSION

[¶ 8]   Cates, as the moving party, was required to establish the absence of a genuine issue of material fact. The parties admit that in October, 1995, they entered into a written agreement entitled "Lease Option to Purchase" for the purchase of certain real estate. The agreement required the Lintons to make payments of $125 per month. Cates concedes that the Lintons timely made all monthly payments from the date of the contract until the complaint was filed on December 30, 2003. Cates accepted all payments. Thereafter, the Lintons deposited their monthly payments with the district court.

[¶ 9]   The parties also agree that the written agreement contained an option clause which, if exercised by the Lintons, would allow them to purchase the property for $20,000. The dispute between the parties centers upon this option clause. The Lintons contend that Cates orally agreed to a modification of the option clause. Cates denies that any oral modification occurred and asserts that the Lintons failed to timely exercise the option and forfeited any rights they had to purchase the property.

[¶ 10]   According to the Lintons, they suffered a family tragedy on June 6, 1996, when their 15 year old daughter was killed in a car accident. The emotional fallout from this event negatively impacted Mr. Linton's employment and the Lintons' financial situation.

[¶ 11]   According to Mrs. Linton's affidavit:

4. A few weeks after our daughter's death, Earl Cates called about the lease-purchase agreement. He said he had recently lost his beloved pet dog so he understood what we were dealing with. He assured me he would not try to profit from our misfortune and would continue to allow us to purchase the property for $20,000.00 so long as we continued to pay the monthly lease of $125.00. I stated I would have Ernest call him back.

5. Because of these assurances from Mr. Cates and his continued acceptance of our monthly payments, I understood that my husband and I had the opportunity to purchase the property from him for $20,000.00 less the 75% credit for the past rent payments. I would not have continued to make the lease payments for all these years if I did not believe that my husband and I could acquire the parcel for $20,000.00.

6. Our later attempts to contact Mr. Cates about the situation were not successful. We learned that he was out of the country living in Mexico. Our monthly payments were made directly into the bank account that E.C. Cates Agency Inc. maintained in Casper, Wyoming at the Wells Fargo Bank.

7. It was not until June, 2003 that by happenstance my husband and I ran into Mr. Cates near the subject property while he was apparently showing this real estate for sale to another party. We offered to pay him the remaining amount owing or $11,281.25 based on the fact that through June, 2003, my husband and I had paid him $11,625.00 of which $8,718.75 would be credited to the purchase price. Mr. Cates said he was no longer interested in selling us the real estate for $20,000.00 and instead wanted a higher price or some other arrangement.

[¶ 12] In his affidavit, Mr. Linton confirmed Mrs. Linton's statements. He provided details of an additional conversation he had with Mr. Cates approximately one year after the death of his daughter. He also described actions taken in reliance upon the modified agreement.

4. After my daughter's death and prior to the time to pay the down payment for the purchase of the subject real estate, I called Earl Cates to explain the devastating blow I had just suffered. He was very sympathetic and said to just keep paying the regular lease amount and they would extend the deal until I was "back on my feet". I understood that so long as E.C. Cates Agency received the $20,000.00 from a portion of the rental or whatever source, the property would be sold to me.

5. Approximately a year later, I called Mr. Cates to discuss the situation and particularly my slow recovery. He agreed to continue to allow us to purchase the real estate for the sum of $20,000.00 with credit towards the purchase price from the lease amount as per our agreement of October 4, 1994 if my wife and I would continue to pay the monthly $125.00 lease.

6. Because of these assurances from Mr. Cates and his continued acceptance of our monthly payments, I understood that my wife and I had the opportunity to purchase the property from him for $20,000.00 less the 75% credit for the past rent payments. I would not have continued to make the lease payments for all these years and rebuild and maintain the fence surrounding the property if I did not believe that my wife and I could acquire the parcel for $20,000.00.

[¶ 13] Cates does not dispute that in June, 2003, the Lintons offered to pay the balance of the $20,000 purchase price in full. Cates stated in its answer:

2. With respect to paragraph 7 of the Complaint, Defendant admits that in June of 2003, Plaintiffs notified Defendant through its principal, Earl Cates, of their willingness and readiness to purchase the property, and further admits that Defendant refused and continues to refuse to sell such property to the Plaintiffs. Defendant denies the allegation that the Plaintiffs had an option to purchase the property.

[¶ 14] Cates alleged in its answer that it was entitled to prevail because the Lintons had never complied with the option requirement of the contract. In seeking summary judgment, however, Cates contended that it was entitled to prevail because the original agreement was unenforceable from inception because it was fatally indefinite. The district court granted summary judgment on that basis. The district court stated:

... under *Crockett v. Lowther*, 549 P.2d 303 (Wyo.1976), a provision in a contract which leaves open the terms of payment for future negotiation renders the contract incomplete and uncertain in one of its material features, and for that reason it is unenforceable in equity.

THE COURT FURTHER FINDS that in the case of *Bonk v. Boyajian*, 128 Cal. App.2d 153, 274 P.2d 948 (Calif.1954) which was referred to in *Bentzen v. H.N. Ranch, Inc.*, 78 Wyo. 158, 320 P.2d 440 (Wyo.1958), the California court, in construing a similar option to purchase as the above-named parties have entered into, denied an action of specific performance of such option to purchase since such option was incomplete,

uncertain, and indefinite, so as to render such option to purchase unenforceable.

THE COURT FURTHER FINDS that the contract entered into between the parties is indefinite, incomplete, and uncertain, and is unenforceable.

THE COURT FURTHER FINDS that summary judgment should be granted in favor of the Defendant, E.C. Cates Agency, Inc.

[¶ 15] It appears that the district court, in granting summary judgment, disregarded all evidence in the record that the original agreement had been modified. We conclude that the district court erred in doing so. When all favorable inferences are accorded the Lintons, the record contains sufficient evidence to create genuine issues of material fact as to whether an enforceable agreement existed between the parties.

[¶ 16] Whether an oral contract exists is a question of fact to be determined by the trier of fact. *Fowler v. Fowler*, 933 P.2d 502, 504 (Wyo.1997). The terms and conditions of the oral contract and the intent of the parties are generally questions of fact. *Ewing v. Hladky Const., Inc.*, 2002 WY 95, ¶ 11, 48 P.3d 1086, ¶ 11 (Wyo.2002). The question as to whether the parties intended an agreement is a factual one, not a legal one, and, except in the clearest cases, is to be resolved by the trier of fact. *Roussalis*, 4 P.3d at 216. In determining whether a contract was formed, we may consider the conduct of the parties with reference to the alleged contract. *Id.* at 232. Their conduct before and after making the alleged contract "may shed light on their intent." *Id.*

[¶ 17] We have previously indicated some skepticism regarding a belated claim of indefiniteness by a party seeking to avoid contractual obligation.

The courts must take cognizance of the fact that the argument that a particular agreement is too indefinite to constitute a contract frequently is an afterthought excuse for attacking an agreement that failed for reasons other than the indefiniteness. In such instances, the court should not be too fussy to determine how the gaps should have been filled. It is simply unnecessary.

*Id.* at 238 (quoting 1 Joseph M. Perillo, *Corbin on Contracts* § 4.1, at 535–37 (rev.ed. 1993)). Indefiniteness in an agreement may be fleshed out by the course of performance by the parties after the agreement. *Id.* "Indefiniteness may also be cured by the addition of such implied terms as will be supplied by law, including—at least as to minor items—the parties' implied obligations of good faith and fair dealing." *Id.* Under Wyoming law every contract is deemed to contain an implied term of good faith and fair dealing. *Id.*

[¶ 18] Our review of the record suggests that the dispute in this case does not, in actuality, revolve around the indefiniteness of the written agreement. There is no evidence in the record to indicate a dispute as to the terms of the future "sales agreement" referenced in the written agreement.

[¶ 19] Under the Lintons' version of the facts, after modification, there were no material contractual terms remaining to be negotiated. The property was identified with particularity, the purchase price was stated with specificity ($20,000) and the method of payment was agreed upon ($125.00 per month with 75% going to the purchase price). The $3,000 down payment requirement was eliminated.

[¶ 20] The district court's reliance upon the decisions in *Crockett, Bonk* and *Bentzen* was misplaced. Initially, we note that all three cases were resolved after trial, not at the summary judgment stage. In *Crockett*, the district court found that the appellant had failed to exercise the option within the time required by the contract. *Crockett* was not determined on the basis of an indefinite or unenforceable contract. The Court stated:

All the material features [of a contract] appear to be present. It is not necessary for us to make a precise decision as to whether or not the option constituted an enforceable contract. It appears that it does have those characteristics which would have made it enforceable upon acceptance by the plaintiffs, which they never did.

*Crockett,* 549 P.2d at 311. The Court went on to state:

> The plaintiffs' failure to sign and their conduct tend to support the conclusion that the plaintiffs did not intend to be bound by a contract. It is reasonable to believe that plaintiffs had no intention of asserting any rights under the contract until it became financially advantageous for them to do so.

*Id.* at 312.

[¶ 21] In this case, the conduct of the Lintons supports their claim. They made all monthly payments, built and maintained a fence on the property, and offered to tender the balance of the purchase price. They have an explanation for their failure to make the $3,000.00 option payment. Their daughter had died and Mr. Cates, sympathetically, agreed to modify the contract.

[¶ 22] In *Bentzen,* the Court stated the issue as follows:

> Accordingly, the principal question to be resolved is narrowed to a determination of whether or not there was in fact an enforceable contract. This will depend primarily upon the nature of the instrument signed and secondarily upon any conversations, dealings, and activities, between the parties which under the circumstances are admissible and can be said to have had a legal effect upon the "Agreement."

*Bentzen,* 320 P.2d at 441. In affirming the decision of the trial court, the Court noted:

> The parties conceded the well-recognized rule that the findings and judgment of the trial court will stand if there is any evidence to support them, and we think the rule is applicable here. The evidence of what was and was not said at the time the signatures were affixed, whether proper or not, went in without objection; and it seems clear that the trial court would have been justified in resolving at its discretion that the understanding between the parties was either (a) definite, or (b) fatally indefinite—depending upon the credence it

might properly allocate to the conflicting testimony of different witnesses.

*Id.* at 444.

[¶ 23] In this case, the district court rendered its decision without trial, without weighing the evidence and without making any determination regarding witness credibility. The district court failed to consider and apply all reasonable inferences from the evidence which support the Lintons' version of the agreement.

[¶ 24] In *Bonk,* the purchaser attempted to unilaterally determine the amount of monthly payments required to exercise the option. The seller never agreed to those payment amounts. The *Bonk* court refused to enforce the option because:

> The parties thus unmistakably reserved for future agreement the amount of monthly payments to be made on the balance. They never agreed on this item. Hence no specifically enforceable obligation was created by the option and plaintiffs attempted exercise thereof.

*Bonk,* 274 P.2d at 951. In this case, there is evidence of agreement between the parties regarding all essential terms of the sale of the property.

[¶ 25] Cates contends on appeal that any oral modification of the written agreement is unenforceable pursuant to Wyoming's statute of frauds. Wyo. Stat. Ann. § 1–23–105(a)(v) (LexisNexis 2003).[1] Cates concedes that there is no indication in the record that the district court based its decision upon application of the statute of frauds. However, because the Lintons' claim is founded upon their assertion that an oral modification of the written contract occurred, a discussion of proper application of the statute of frauds in the context of a summary judgment proceeding is warranted.

[¶ 26] As a general rule, the statute of frauds provides that an agreement for the sale of real property must be in

---

1. Wyo. Stat. § 1–23–105(a)(v) states:
   (a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:

   . . . .
   (v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year;
   . . . .

writing to be enforceable. It is also the general rule that if the original agreement was required to comply with the statute of frauds, any material modification of that agreement must also conform to the statute of frauds. *Roussalis,* 4 P.3d at 242. There are, however, recognized exceptions to the general rule. *Id.*

[¶ 27] The statute of frauds may be inapplicable when there has been substantial performance. *Metz,* ¶ 17; *Wyoming Realty Co. v. Cook,* 872 P.2d 551, 554 (Wyo.1994). We have also recognized that an oral promise otherwise within the statute of frauds may be enforceable on the basis of promissory estoppel. *Roussalis,* 4 P.3d at 243. Whether any exception exists that would warrant avoidance of strict application of the statute of frauds is a question of fact. *Id.* at 244, 253. We conclude that the record before us contains sufficient evidence that creates genuine issues of material fact as to the application of the statute of frauds.

[¶ 28] Based upon the foregoing, we conclude that the district court erred in granting summary judgment to Cates. Accordingly, we reverse and remand.