2007 WY 148

Mike SCHMID, Appellant (Defendant),

v.

Pat SCHMID, Appellee (Plaintiff).

Nos. 06–268, 06–270.

Supreme Court of Wyoming.

Sept. 18, 2007.

Representing Appellant: Clark D. Stith, Rock Springs, Wyoming.

Representing Appellee: P. Richard Meyer and Robert N. Williams, of Meyer and

Williams, Jackson, Wyoming. Argument by Mr. Meyer.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Mike Schmid appeals the judgment entered in favor of his brother, Pat Schmid.[1] He contends that the trial court improperly excluded much of the evidence he offered in support of his version of the terms of an oral agreement between the two brothers. We agree that the trial court abused its discretion in excluding the evidence, and so we reverse the judgment and remand the case for a new trial.

## ISSUES

[¶ 2] These issues are presented for our review:

1. Whether the district court abused its discretion in excluding evidence corroborating Mike's theory of the case;

2. Whether the district court abused its discretion in refusing to allow Mike's counsel to cross-examine Pat concerning deposition and trial testimony that supported Mike's theory of the case;

3. Whether the district court violated Mike's due process rights under article I, section 6 of the Wyoming Constitution;

4. Whether the district court violated Mike's due process rights under the Fourteenth Amendment to the United States Constitution;

5. Whether the district court erred by denying Mike's pretrial motion for summary judgment and motion for directed verdict at trial, both made on the grounds of the statute of frauds and the lack of any fiduciary duty from Mike to Pat; and

6. Whether the district court abused its discretion in denying Mike's motion for a new trial.

## FACTS

[¶ 3] Mike and Pat Schmid are brothers. We will refer to them by their first names. Mike owned an oilfield services company, Schmid Oilfield Services, Inc. ("SOS"). Pat was employed by SOS for many years, but was not an owner. SOS was successful, and in 2000, First Energy Services Company ("FESCO") paid Mike a substantial sum to purchase SOS. As part of the transaction, Mike went to work for FESCO, and continued to manage SOS for his new employer. Also as part of the agreement, Mike was to receive a significant bonus from FESCO if SOS performed well during the two years following the transaction. The formula for calculating the bonus was complex, and the details are not especially pertinent to this appeal. It is sufficient for our purposes to note that, if SOS met certain performance targets in the two years after the sale, Mike would receive a bonus from FESCO based on SOS's average annual earnings over those two years.

[¶ 4] Mike, in turn, offered to pay bonuses to his brother Pat and two other long-term SOS employees, Ted Olmsted and Mike Denison, hoping that the three men would stay on with the company and contribute to its continuing success. The agreements were never put in writing, although Mike made some cryptic notes and gave them to Mr. Denison, and Pat kept notes during his meeting with Mike. The two sets of notes were nearly identical.

[¶ 5] For various reasons, SOS did not perform as well as expected in the two years after its purchase by FESCO. Mike and FESCO ended up disagreeing about the amount of bonus he should receive, a dispute that Mike eventually settled by accepting an amount less than he had originally expected.

---

1. Two separate appeals were filed, the first challenging the district court's judgment, and the second regarding the denial of a motion for new trial. The two appeals were consolidated, and both are resolved by this opinion.

Because his bonus from FESCO was so small, Mike claimed he did not. owe any bonuses to Pat, Mr. Olmsted, or Mr. Denison. Pat disagreed.

[¶ 6] While many details complicated their disagreement, the crux of the dispute involved the calculation of the amount of Pat's bonus. Mike maintained that he had offered to pay Pat an amount that depended on what Mike received as a bonus from FESCO, which was based on SOS's *average* annual earnings in the two years after the sale. Pat insisted that the amount of his bonus did not depend on what Mike received from FESCO, and that Mike had agreed to pay Pat based on SOS's *total* earnings over the two year period.[2]

[¶ 7] At trial, Mike was prepared to testify that he made the same offer to Pat that he made to Mr. Olmsted and Mr. Denison. Mike maintained that Mr. Olmsted and Mr. Denison would testify in support of his version of the agreements. Mike also intended to enter into evidence the notes he had made and given to Mr. Denison, contending that the striking similarity between his notes and Pat's notes supported his assertion that he had made the same bonus offer to all three men.

[¶ 8] Pat, however, contended that the offer Mike made to him was different from his offer to Mr. Olmsted and Mr. Denison. On that basis, he argued that evidence about Mike's agreements with Mr. Olmsted and Mr. Denison was not relevant to prove the terms of the agreement Mike had made with him. Pat further contended that Mike's notes were irrelevant, because they related to Mike's agreement with Mr. Denison, not Mike's agreement with him.

[¶ 9] The trial court agreed with Pat, and deemed the evidence inadmissible. Despite repeated efforts by Mike's counsel to change the trial court's decision, that ruling was maintained throughout the trial. The jury returned a verdict in Pat's favor, and Mike filed this appeal.

## DISCUSSION

### First Issue: Exclusion of Evidence

[¶ 10] We review a trial court's evidentiary decisions for an abuse of discretion.

> Rulings on the admission of evidence are placed within the sound discretion of the trial court and, in order to successfully challenge these rulings on appeal, an appellant must show that the trial court committed a clear abuse of discretion. A trial court's rulings on the admissibility of evidence are entitled to considerable deference, and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal. The appellant bears the burden of showing an abuse of discretion.

*Sanchez v. State,* 2006 WY 116, ¶ 20, 142 P.3d 1134, 1140 (Wyo.2006) (internal citations and quotation marks omitted). Even when a trial court errs in an evidentiary ruling, we reverse only if the error was prejudicial. The appellant must show a reasonable probability that, without the error, the verdict might have been different. *Smyth v. Kaufman,* 2003 WY 52, ¶ 29, 67 P.3d 1161, 1169–70 (Wyo.2003).

[¶ 11] We begin our review of the parties' contentions at the time when the admissibility of the disputed evidence first became an issue. In a pretrial conference held the Friday before trial started on Monday, the trial court considered Pat's motion in limine to exclude the testimony of Mr. Olmsted and Mr. Denison. Mike's counsel opposed the motion, explaining that the "heart of our defense" was that Mike's agreement with Pat was "the same agreement" he

---

**2.** The parties disputed many complicated details about the bonus calculation. For example, they disagreed about the definition of "earnings" under Mike's agreement with FESCO and under Mike's agreement with Pat. These details were important at trial, because they helped determine whether Pat was entitled to the bonus, and if so, in what amount. However, they are not significant to our decision, and need not be further considered here.

had with Mr. Olmsted and Mr. Denison. Testimony from Mr. Olmsted and Mr. Denison, he said, would support Mike's version of the agreement. Pat's counsel countered that any testimony from Mr. Olmsted and Mr. Denison would be "extraneous" because they did not know the terms of Mike's agreement with Pat. Pat contended that his agreement with Mike was different from the agreements with Mr. Olmsted and Mr. Denison, and even if the agreements were similar, testimony from Mr. Olmsted and Mr. Denison was irrelevant in establishing the terms of Pat's agreement. Mike's counsel re-emphasized Mike's position "not [that] the agreements were similar," but that they were "mirror images, that they're identical agreements."

[¶ 12] The trial court ruled that the evidence should be excluded. It explained that "each agreement has to stand on its own, and somebody else's interpretation of their agreement with Mike Schmid is—is not going to be allowed." The trial court later excluded Mike's notes he had given to Mr. Denison on the basis that those notes related to Mike's agreement with Mr. Denison, not his agreement with Pat.

[¶ 13] On the morning before trial started, Mike followed up with a written offer of proof. At a hearing shortly before jury selection began, Mike's counsel renewed his argument that Mike's agreements with Mr. Olmsted and Mr. Denison were "mirror images" of his agreement with Pat, and that testimony from Mr. Olmsted and Mr. Denison would support Mike's version of the terms of the agreements. The court maintained its prior ruling, excluding the offered evidence, because the trial was about Mike's agreement with Pat, "not his agreement with the other two."

[¶ 14] In considering this case, it is important to keep in mind that the parties were attempting to establish the terms of their oral agreement. There was no written contract with definite and unambiguous terms. Where the language of a contract is indefinite or ambiguous, all the surrounding circumstances must be considered in order to ascertain its terms. *Mountain Fuel Supply Co. v. Central Engineering and Equipment Co.*, 611 P.2d 863, 868 (Wyo.1980). To establish the terms of an oral agreement, a broad range of evidence may be taken into consideration. For example, the parties' "conduct before and after making the alleged contract 'may shed light on their intent.'" *Linton v. E.C. Cates Agency, Inc.*, 2005 WY 63, ¶ 16, 113 P.3d 26, 30 (Wyo.2005).

[¶ 15] As a general proposition, all relevant evidence is admissible. W.R.E. 402. Evidence is relevant if it has any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence. W.R.E. 401. Testimony from Mr. Olmsted and Mr. Denison about the terms of their oral agreements with Mike, coupled with Mike's testimony that those agreements were identical to his agreement with Pat, would tend to make Mike's version of his agreement with Pat more probable. The key to this analysis is that Mike was prepared to testify that the three agreements were identical. Absent that connection, evidence about the terms of his other agreements might not be relevant in establishing the terms of his agreement with Pat. With that connection, the evidence is relevant. We conclude that, to establish the terms of an oral agreement, evidence about the terms of other, identical agreements is relevant, probative, and generally admissible.

[¶ 16] Even relevant and probative evidence may be inadmissible for other reasons.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

W.R.E. 403. The issue of whether the evidence was unfairly prejudicial was not discussed at the pretrial stage. Later, after the trial began, Mike's counsel renewed his request to admit the evidence. At that point, the trial court concluded that it would be unfairly prejudicial to change its ruling and

admit the evidence, because opening statements had been made, and testimony taken, based on the trial court's earlier decision to exclude the evidence. While it might have been prejudicial at that point, when considered at the pretrial stage, the relatively simple testimony from Mike, Mr. Olmsted, and Mr. Denison would seem to present little danger of unfair prejudice, confusion, or misleading the jury. Nor was the testimony needlessly cumulative.

> [A]t times it is entirely reasonable for a party to insist, "One witness is good, but two or three will make my case much stronger, even though all will testify in a similar vein." In short, the discretion of the trial judge to exclude cumulative evidence must be exercised in a discriminating fashion, and with wisdom, particularly where the evidence in question goes to issues of central importance in the case. . . . Thus, evidence which in the context of the litigation is merely repetitious or time consuming may be excluded, but only if time consideration substantially outweighs the incremental probative value of the proffered evidence.

*Winterholler v. Zolessi*, 989 P.2d 621, 629 (Wyo.1999) (internal citations omitted) (citing 2 D. Louisell and C. Mueller, *Federal Evidence* § 128, at 74–75; M. Graham, *Handbook of Federal Evidence* § 403.1, at 179 (2d ed.1986)). Testimony from two witnesses supporting Mike's version of the agreement would have had considerable probative value, not outweighed by other consideration.

[¶ 17] On appeal, Pat asserts that Mike's offers of proof to the trial court were inadequate. He points out that the offers did not quote testimony from the depositions of Mr. Olmsted or Mr. Denison, did not solicit actual testimony from the witnesses, and specified few details of their proposed testimony. On this basis, Pat urges that Mike's offers of proof were defective, citing *Skinner v. State*, 2001 WY 102, ¶ 39, 33 P.3d 758, 771 (Wyo. 2001). *Skinner* is distinguishable, because there, no offer of proof had been made. Here, Mike's counsel did make offers of proof, and we may test them against the requirements of the Wyoming Rules of Evidence.

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [if] the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which the questions were asked.

W.R.E. 103(a)(2). We have stated that the "dual purpose of an offer of proof is to alert the trial court to the nature of the error in order to allow corrective action, and at the same time to create a sufficient record for appellate review." *Armstrong v. Hrabal*, 2004 WY 39, ¶ 16, 87 P.3d 1226, 1232 (Wyo. 2004).

[¶ 18] Mike's oral and written offers of proof included representations that Mike would testify that his agreement with Pat was "the same agreement" he had with Mr. Olmsted and Mr. Denison, that the agreements were "mirror images," and that the three agreements were "identical." With regard to the testimony of Mr. Olmsted and Mr. Denison, the offers of proof included the brief explanation that "both of [these] witnesses are expected to testify that they agree with Mike," and the request that Mr. Olmsted and Mr. Denison "be allowed to testify as to [their] understanding of the terms of the offer that Mike Schmid made to [them]." These offers of proof were not lengthy, but because the proposed testimony was not complicated, the offers provided sufficient detail and explanation. They adequately informed the trial court about the nature of the proposed evidence, and provided adequate information for meaningful appellate review. Because Mike's offers of proof accomplished their required purposes, they satisfied the mandate of W.R.E. 103.

[¶ 19] Pat further asserts that the testimony of Mr. Olmsted and Mr. Denison would not have been as favorable to Mike's position as had been represented. He quotes portions of their deposition testimony suggesting that they lacked understanding or recollec-

tion of details of the agreements. Not surprisingly, Mike cites other portions of the depositions that support his position. These arguments go to the weight of the evidence, not its admissibility. *See* 5 Margaret N. Kniffen, *Corbin on Contracts* § 24.9, at 60–61 (Joseph M. Perillo ed., rev. ed.1998).

[¶ 20] We therefore determine that the trial court erred in excluding the evidence. We are also persuaded that the error was prejudicial. When the trial court excluded much of Mike's proposed evidence, the trial was essentially pared down to Mike's testimony about his version of the agreement versus Pat's testimony about his version. Under these circumstances, the jury may have found the testimony of Mr. Olmsted and Mr. Denison particularly credible and persuasive. Neither was a party to the suit. Contrary to their own pecuniary interests, both were prepared to testify that, under the terms of their agreements, Mike owed them no bonus. The potential significance of their testimony generates a reasonable probability that the jury might have reached a different verdict if it had been allowed to consider the evidence.

[¶ 21] Further, this Court has indicated that a litigant is usually entitled to a remand and a new trial if he was unfairly restricted in developing and presenting his theory of the case. *Capshaw v. WERCS*, 2001 WY 68, ¶ 10, 28 P.3d 855, 858 (Wyo. 2001); *Stauffer Chem. Co. v. Curry*, 778 P.2d 1083, 1100 (Wyo.1989). When the issue is the exclusion of evidence, we generally prefer to allow a party his "day in court" to resolve a controversy on its merits. *Winterholler*, 989 P.2d at 628. The trial court's rulings unduly restricted the presentation of Mike's theory of his case, and largely denied Mike his day in court, further supporting the conclusion that the error was unfairly prejudicial.

[¶ 22] In sum, finding no legitimate basis for the trial court's exclusion of the evidence, we are compelled to rule it an abuse of discretion. In reaching that conclusion, we determine that Mike's offers of proof were adequate to serve their purposes. Mike was prejudiced by the trial court's decision, and so we reverse the judgment and remand the case for a new trial.

**Remaining Issues**

[¶ 23] Our resolution of the first issue resolves most of the remaining issues as well. Mike's second issue, whether he should have been allowed to cross-examine Pat about his knowledge that the three agreements were identical, should be decided by the district court in the context of the new trial. His third and fourth issues, constitutional due process claims, need not be addressed because we are reversing the judgment for other reasons. We prefer not to decide constitutional issues when a case can be resolved on other grounds. *State ex rel. State Dep't of Revenue v. Union Pac. R.R.*, 2003 WY 54, ¶ 43, 67 P.3d 1176, 1191 (Wyo.2003). His sixth issue, asserting that the district court should have granted a motion for new trial, is also resolved as a practical matter by our remand for a new trial.

[¶ 24] Mike's fifth issue, however, remains unresolved. Mike asserts that the district court erred in denying his pretrial motion for summary judgment, and his motion for directed verdict made near the close of trial. These motions rested on two contentions. One was that, as a matter of law, he owed no fiduciary duty to Pat. We have previously observed that a fiduciary relationship is "extraordinary and not easily created." *Martinez v. Associates Fin. Servs. Co.*, 891 P.2d 785, 789 (Wyo.1995). The record currently before us would not support Pat's claim of fiduciary duty, but because we cannot predict whether additional evidence might be presented at a new trial, it seems prudent to leave this claim for the trial court to consider in the context of the new trial.

[¶ 25] Mike also contends that his agreement with Pat was unenforceable under the statute of frauds. If Mike is correct, all of Pat's claims fail, and there would be no need for a new trial on remand. We will therefore resolve this contention before remanding the case to the district court.

[¶ 26] We note first that the denial of a summary judgment motion is not an appealable order. *St. Paul Fire and Marine Ins. Co. v. Albany County Sch. Dist. No. 1,* 763 P.2d 1255, 1257 (Wyo.1988). Reasons for this rule, and the policies behind it, were well explained in *State Farm Mut. Auto. Ins. Co. v. Shrader,* 882 P.2d 813, 820 (Wyo.1994), and we will not consider Mike's fifth issue in the context of a denied motion for summary judgment. However, the trial court's denial of Mike's motion for judgment as a matter of law, made at the close of trial, is an appealable order. The trial court's legal conclusions are reviewed *de novo, Sayer v. Williams,* 962 P.2d 165, 167 (Wyo.1998), while we view the facts in the light most favorable to the trial court's decision.

> A judgment as a matter of law is appropriate when reasonable jurors could reach but one conclusion as to the verdict. We regard the nonmoving party's evidence as being true, and we give that party the benefit of all reasonable inferences that may be drawn from the evidence. Additionally, we do not weigh the evidence or assess the credibility of the witnesses. A judgment as a matter of law deprives the opposing party of the opportunity to have the jury determine the facts, and the court should, therefore, use caution in granting such a judgment.

*Anderson v. Duncan,* 968 P.2d 440, 442 (Wyo.1998) (internal citations omitted).

[¶ 27] The codified Wyoming statute of frauds provides in relevant part as follows:

> In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:
>
> (i) Every agreement that by its terms is not to be performed within one (1) year from the making thereof.

Wyo. Stat. Ann. § 1–23–105(a)(i) (LexisNexis 2007). Mike points out that he could not have paid the bonus to Pat within one year, because the amount of the bonus was based on the company's average earnings over two years (Mike's version), or gross earnings over two years (Pat's version). Either way, the agreement could not be performed within one year, it was never put in writing, and was not subscribed by Mike. Therefore, he asserts, the agreement was void and unenforceable under the statute of frauds.

[¶ 28] The trial court rejected Mike's argument, ruling that Pat had performed his part of the agreement by remaining in the employ of SOS over the two year period. An exception to the statute of frauds may apply when one party substantially performs his part of an oral agreement. *Linton,* ¶ 27, 113 P.3d at 32. This exception helps prevent the injustice that would result if one party fully met his obligations under the agreement while the other party is allowed to avoid his corresponding obligations. *See, e.g., Wyoming Realty Co. v. Cook,* 872 P.2d 551, 554 (Wyo.1994).

[¶ 29] The trial court's application of the substantial performance exception in this case is supported by evidence in the record. Pat testified that, at considerable inconvenience to himself and his family, he continued living and working for the company in Wamsutter. He testified to a grueling schedule in which 90 hours at work was "a pretty routine week." He also testified that he worked harder and got involved with additional projects because of the "extra motivation" of the bonus Mike offered him. The latter is particularly significant, because it indicates that Pat's extra efforts were specifically attributable to his agreement with Mike, and not to his general obligations as an employee. Taken in the light most favorable to Pat, his testimony provided sufficient evidence to support a reasonable inference that he substantially performed his obligations under the agreement. The trial court properly denied Mike's motion for judgment as a matter of law.

[¶ 30] This is true despite Mike's contention that the substantial performance exception to the statute of frauds does not apply to employment contracts. For that proposition,

he cites to a concurring opinion in *WERCS v. Capshaw*, 2004 WY 86, ¶¶ 26–28, 94 P.3d 421, 429 (Wyo.2004). However, the majority opinion does not hold or suggest that the substantial performance exception does not apply to employment contracts. Even if we took the position of the concurring opinion, Pat was not Mike's employee. Both were employees of FESCO. The agreement between Mike and Pat had some characteristics of an employment contract, in that it offered Pat a bonus for continuing his employment and working hard. It was not an employment contract, however, and the trial court properly applied the substantial performance exception to the statute of frauds.

### CONCLUSION

[¶ 31] We hold that the district court abused its discretion in excluding Mike's evidence concerning other agreements that he asserted were identical to his oral agreement with Pat. With regard to Mike's motion for judgment as a matter of law, we uphold the district court's denial on the statute of frauds issue. We reverse the judgment on the evidentiary issue, and remand the case to the district court for a new trial.